[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-14301
Non-Argument Calendar

————————————————

D.C. Docket No. 1:15-cv-00347-SCJ

AVIS K. HORNSBY-CULPEPPER,

Plaintiff-Appellant,

versus

R. DAVID WARE,
in his Individual and Official Capacity,
FULTON COUNTY, GA,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

(October 19, 2018)

Before WILLIAM PRYOR, BRANCH, and ANDERSON, Circuit Judges.

BRANCH, Circuit Judge:

Avis Hornsby-Culpepper, proceeding *pro se*, appeals the district court's

grant of summary judgment in favor of her former employer, Fulton County,

Georgia ("the County"), and former interim county manager R. David Ware, in her

employment action asserting, *inter alia*, claims of (1) wage discrimination based

on her race and sex, in violation of the Equal Protection Clause and 42 U.S.C.

§ 1983; (2) wage discrimination based on her gender in violation of the Equal Pay

Act, 29 U.S.C. § 206(d)(1); and (3) retaliation by terminating her employment and

not selecting her for an Associate Judge position, in violation of the Equal Pay Act,

as incorporated into the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§ 215(a)(3).[1]  On appeal, she argues that the district court erred in granting

summary judgment as to those claims.  We affirm.

## I.    Background

Avis Hornsby-Culpepper, a black female, initially worked as an attorney

with the Fulton County Public Defender's Office ("PD's Office") from 1989 to

---

[1] Hornsby-Culpepper also asserted a retaliation claim based on her non-selection for an interview for a Supervisor Attorney Position in the Fulton County Public Defender's Office in July 2015.  However, in her initial brief before this Court, she states in passing that she was "black-balled" by the County in not being selected for an interview, but offers no substantive argument on the merits of this issue.  Because she is a licensed attorney, we do not liberally construe her pleadings, *Olivares v. Martin*, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977), and, therefore, we conclude this issue is abandoned.  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (explaining that issues not briefed on appeal are deemed abandoned).

2007. She retired in 2007 and entered private practice. She returned to the PD's Office approximately 18 months later. Shortly thereafter, she applied for and accepted the position of Clerk of Court for the Fulton County Juvenile Court and held that position from 2009 to 2011. In April 2011, however, Hornsby-Culpepper was terminated. At the time of her termination, her salary was approximately $90,000 plus longevity pay.[2] She then returned to private practice.

Edwin Bell, a black male, replaced Hornsby-Culpepper as Clerk. Omotayo Alli, the Chief Administrative Officer for the Juvenile Court, requested a higher-than-minimum salary for Bell and it was approved by the County Manager at the time, Zachary Williams.[3] Bell's salary was approximately $90,000 annually. The Clerk of Court position became vacant again in July 2012.

In January 2013, Alli implemented a "reduction in force" to make required budget cuts in the Juvenile Court, and, as a result, two employees were laid off. In February 2013, Alli submitted a request for authorization to hire a new Clerk of Court to David Ware,[4] a black male, who was serving as Interim County Manager at that time. Ware approved the request, authorizing Alli to hire a Clerk at an

---

[2] Longevity pay is additional pay "to reward employees who . . . have completed long and satisfactory service" with the County.

[3] Pursuant to Fulton County's Personnel Regulation 300-2, all requests for higher-than-minimum salaries must be approved by the Personnel Director and then submitted to the County Manager for final approval.

[4] Ware was the County Attorney for Fulton County from November 2008 to July 2015. He also served as interim County Manager from January 2013 to October 2013.

annual salary of $71,172.  Hornsby-Culpepper applied for the position at the request of Alli and Chief Judge Bradley Boyd.  Alli told Hornsby-Culpepper that she would receive her previous salary.

On March 20, 2013, Hornsby-Culpepper received an offer letter for the Clerk of Court position.  It indicated that her annual salary would be $99,744, pending approval by the County Manager.  Alli submitted the higher salary request for Ware's approval, indicating that the position had been budgeted for a salary of $71,172, so a total of $39,429 in additional funding was required for the proposed salary.  She identified a "professional services" line item in the budget as the proposed funding source.  In support of the request, Alli referenced Hornsby-Culpepper's 20 years of managerial experience, her understanding of the law and the court system, her customer-service oriented approach, and her previous tenure as Clerk.  Ware ultimately denied the higher salary request, but Hornsby-Culpepper did not learn of this until she received her first paycheck and discovered it was less than expected.  Alli told her she would talk to Ware about the salary issue.  A couple of months later, while at a swearing-in ceremony for several new juvenile court judges, Hornsby-Culpepper approached Ware and asked him why she was not being paid at least as much as her predecessor Bell, whom she believed was less qualified.  Ware responded that it was because Hornsby-Culpepper previously was fired, while Bell was not.

4

Despite Ware's stated reason, Hornsby-Culpepper believed that the denial of her higher salary request was because she was a black female.  Thus, in September 2013, she filed a claim with the Equal Employment Opportunity Commission ("EEOC"), asserting that the denial of her higher salary request was the result of sex discrimination,[5] in violation of Title VII of the Civil Rights Act of 1964 and the Equal Pay Act.  In November 2014, the EEOC issued her a right-to-sue letter.  In February 2015, Hornsby-Culpepper filed a complaint asserting that Ware and the County discriminated against her on the basis of race, gender, and age by denying her higher salary request.

Around the same time in February 2015, Hornsby-Culpepper applied for the position of an Associate Judge on the Juvenile Court.  The selection panel consisted of three juvenile court judges with equal voting power—Chief Judge Bradley Boyd, Judge Willie J. Lovett, Jr., and Judge Juliette Scales. Hornsby-Culpepper made it to the second round of interviews, but was ultimately not selected for the position.  Renata Turner, a black female, was selected instead.

In May 2015, Alli hired an outside company, Canyon Solutions, Inc., to conduct an assessment of the Clerk's Office.  The final report explained which

---

[5] Although Hornsby-Culpepper did not allege a race claim in her EEOC charge, she could still bring a race discrimination claim in her civil complaint provided that it was reasonably related to the allegations in her EEOC charge. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277 (11th Cir. 2004) (noting that the allegations in a plaintiff's civil complaint "may encompass any kind of discrimination like or related to the allegations contained in the [EEOC] charge" (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970))).

areas needed improvement and provided 15 specific recommendations for improving the operations of the Clerk's Office.  The report did not directly comment on Hornsby-Culpepper's performance as Clerk.  On June 14, 2015, Alli informed Hornsby-Culpepper that her employment was to be terminated effective July 15, 2015.  When Hornsby-Culpepper asked why she was being terminated, Alli stated that "the court was going in a different direction."  Prior to her termination, Hornsby-Culpepper had not been given any verbal or written warnings or counseling regarding her performance as Clerk.

Hornsby-Culpepper subsequently filed a second- and third-amended complaint in the district court.  In the operative third-amended complaint she alleged, in relevant part, that (1) Ware and the County engaged in a pattern or practice of intentional race and gender discrimination, in violation of the Equal Protection Clause and § 1983, by denying her higher salary request and paying her less than her male predecessor; (2) the County violated the Equal Pay Act by denying her higher salary request and paying her less than Bell based on her gender; and (3) the County retaliated against her for filing the discrimination suit, in violation of the anti-retaliation provision of the Equal Pay Act, by terminating her employment and not selecting her for the Associate Judge position. In support of her race and sex discrimination claims, Hornsby-Culpepper alleged that, around the same time she was rehired as Clerk, Ware approved higher salary requests for

6

three white employees—Terrence Fisher, Daniel VanderEnde, and Amanda Grantham.  Additionally, Hornsby-Culpepper maintained that Ware held discriminatory animus toward black females because he was being sued by three black females in the County Attorney's Office for sexual harassment.  She alleged that she was not selected for the Associate Judge position because there was a "friendly relationship" between Judge Lovett and Ware, and Judge Lovett was aware that she had filed a lawsuit against Ware.  She alleged that there was no cause for her termination as Clerk, as she was never reprimanded and had a "stellar record."

Following discovery, the defendants moved for summary judgment.  The defendants argued, in relevant part, that Hornsby-Culpepper could not refute the legitimate, non-discriminatory reasons for the denial of her higher salary request, her termination as Clerk in 2015, and her non-selection for the position of Associate Judge.

In support of the motion, the defendants attached various affidavits, as well as Hornsby-Culpepper's deposition.  Ware averred in his affidavit that he denied Hornsby-Culpepper's higher salary request for three reasons: (1) the proposed funding source was a professional services line-item and the County Board of Commissioners wanted Ware to stop the practice of using non-salary line items in the budget to fund personnel salaries; (2) the request came two months after two

7

employees in the Clerk's Office were laid off due to a budget-mandated reduction in force; and (3) although Hornsby-Culpepper previously served as the Clerk, she was fired from that position. He asserted that his decision was not based in any way on her sex or her race, and denied that he had any animus towards black females. Ware acknowledged that he had approved higher salary requests for three white employees, but stated that his decision to do so was based on factors other than sex and race, as he did not know the race or sex of the individuals at the time he approved the higher salary requests. He explained that those individuals worked in different departments than Hornsby-Culpepper, and to his knowledge, there had been no employees laid off due to a reduction in force in those departments. As to Fisher, an employee with the Fulton County Sheriff's Office, Ware explained that he initially denied a higher salary request to pay Fisher $90,000, which was $19,000 above the minimum salary. After additional discussions with the Sheriff's Office, he approved a higher salary of $75,000, which he believed was appropriate given Fisher's experience and the needs of the Sheriff's Office. With respect to VanderEnde, Ware explained that VanderEnde worked for the Department of Health and Wellness, and his higher salary was funded by a grant. Finally, Ware stated that Grantham was the only employee in the PD's Office for whom Ware approved a higher salary request, which he felt

8

was appropriate based on her experience and the fact that the minimum salary for her position was significantly low.

Alli averred that, after she rehired Hornsby-Culpepper as Clerk, she received many unspecified complaints regarding "the Clerk's Office, the staff and the way in which the Clerk's Office and staff functioned." She stated that Hornsby-Culpepper failed to redirect or train her staff effectively. As a result of the problems, Alli ordered an assessment of the Clerk's Office by Canyon Solutions. Upon receiving the recommendations for improvement, Alli did not think that Hornsby-Culpepper was "a good fit" to implement the changes, so Alli decided to terminate Hornsby-Culpepper's employment.

Chief Judge Boyd averred that he was one of the judges on the selection panel for the Associate Judge position, and that the candidate with the most votes was the one selected to fill the position. He stated that Turner's interview was "far more superior in comparison to Ms. Hornsby-Culpepper's interview." For instance, Turner artfully articulated her understanding of the court system and juvenile law, and offered "strong ideas" for advancing the Court's programs and procedures. Conversely, he stated that Hornsby-Culpepper's responses regarding the goals of the Court and areas of improvement were not impressive. He stated that all three panel members agreed that Turner was the best candidate, and, at no time during the selection process, was Hornsby-Culpepper's pending lawsuit discussed. Judge

9

Lovett's and Judge Scales's affidavits echoed similar reasoning for selecting Turner over Hornsby-Culpepper, and confirmed that the issue of Hornsby-Culpepper's lawsuit never came up during the panel's selection process.

Hornsby-Culpepper stated in her deposition that the basis for her Equal Pay Act and race and sex discrimination claims was the wage disparity between her entry salary and Bell's, even though they held the same exact position and, in her opinion, Bell was less qualified. She stated that she had never heard of the County Manager "blocking" a higher salary request when, as in her case, the person is qualified and has held the position before. She stated that, upon learning that Ware had been sued for sexual harassment by three black females in the County Attorney's Office, "[i]t became clear to [her] that he [was] discriminating against black females . . . because of what he was going through." She acknowledged that there had been a reduction in force, prior to her being rehired, but she did not see it as unreasonable to be paid a higher than entry level salary because a reduction in force is generally "across the board" and only targets non-essential positions, while the Clerk of Court position is essential, carries out the day to day operations, and Bell had been paid above entry level salary. She maintained that the reduction in force reason for denying her request was pretextual and "just something [Ware] came up with," as evidenced by the fact that he approved higher salary requests for other white and male employees.

10

Hornsby-Culpepper stated that Chief Judge Boyd and many others in the court encouraged her to apply for the Associate Judge position, and it was her understanding that the Chief Judge alone made the decision as to who to hire for that position. She heard from Alli that Judge Boyd said she "did great" in the interview and was his "top candidate." Later, Judge Boyd came to Hornsby-Culpepper's office and told her that she was his candidate, but he had been out-voted. He told her she was "a fabulous clerk" and "would make a fabulous judge" and encouraged her to apply again in the future. She stated that Judge Lovett and Ware were friends and she believed the reason she was not selected was in retaliation for her filing the wage discrimination lawsuit.

She averred that, after she filed the wage discrimination lawsuit, Alli's attitude toward her changed, even though they had been friends for 25 years. She acknowledged that, during her second tenure as Clerk, she received complaints from some of the Judges about the Clerk's Office.  These complaints included employees being late to work, employees not wearing appropriate attire, the way in which clerks were handling the files, and staffing decisions. She stated that did not have the authority to discipline employees and all she could do was write them up and then submit the write-up and recommendation to Alli. Although Alli had the authority to discipline employees, she was not disciplining them. Hornsby-Culpepper stated that the complaints eventually turned into complaints

11

about her, and that "the judges just seemed to be on me." She stated that she believed the complaints were in retaliation for filing the wage discrimination lawsuit. She maintained that she was terminated because of the lawsuit, as evidenced by the fact that she was never reprimanded or put on the County's progressive disciplinary policy prior to being terminated.

Hornsby-Culpepper opposed the motion for summary judgment, arguing, in relevant part, that she could show Ware's proffered reasons for denying her salary request were pretextual. Although Ware stated budget issues were one of the reasons he denied her request, Hornsby-Culpepper alleged that, when the County requires budget cuts, it is "across the board" in every department. Even if a department does not employ a reduction in force method, it is still required to make cuts from somewhere. Additionally, she maintained that, in 2013, the Juvenile Court had no budget issues and had money left over in the budget at the end of the year. Second, she argued that, although Ware posited that the transferring of funds in the budget was frowned upon, this was pretextual because Ware's lack of prior experience as County Manager made it "suspect" that he would know of any such policy. Further, transferring of funds was listed as a source of funding option on the higher salary request form, making it "questionable" that this method was actually frowned upon. Finally, she argued that the fact that she was previously terminated as Clerk in 2011 could not serve as a basis for denying her salary

12

request because the termination was without cause.  She maintained that Ware held discriminatory animus towards black females because he was being sued for sexual harassment by three black females in the County Attorney's Office, and that by placing Ware in the position of interim County Manager despite the pending lawsuit, the County promoted a pattern or practice of discrimination. She did not present any substantive argument with regard to her Equal Pay Act and retaliation claims, stating that she incorporated by reference her accompanying affidavit, which largely reiterated statements she made in her deposition. She also attached affidavits from several County employees: Chandra Wilson, an employee with the Office of the Child Advocate, Janelle Williams, an Assistant Public Defender, Jessica Towns, a Probation Office Supervisor, and Stacey Gray, an Administrative Coordinator with the Juvenile Court.  They all generally averred that Hornsby-Culpepper was an asset to the Court, was praised throughout the Court for her performance as Clerk, they were shocked when she was terminated, and the Clerk's Office productivity decreased after she left. Additionally, Gray averred that budget cuts were made across the board in all departments, and that it was up to each department to determine where and how to make the cuts.  Gray opined that, although two employees were laid off from the Juvenile Court due to a reduction in force in 2013, the budget cuts could have been achieved in other ways.  She stated that the Juvenile Court had money left over in its budget in 2013.

13

The district court granted the defendants' motion for summary judgment. The district court concluded that, although Hornsby-Culpepper had demonstrated a *prima facie* case of pay discrimination in violation of the Equal Protection Clause and the Equal Pay Act, she failed to show that the defendants' non-discriminatory, legitimate reasons for not approving her higher salary request were pretext for discrimination.  With regard to her retaliation claim concerning the Associate Judge position, the district court concluded that she failed to demonstrate that the selection panel's legitimate reasons for its decision were pretext for discrimination. Similarly, the district court concluded that she failed to demonstrate that Alli's legitimate, non-discriminatory reasons for firing her were pretext for discrimination. Hornsby-Culpepper filed a timely appeal.

## II.    Discussion

We review *de novo* a district court's grant of summary judgment, viewing "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Battle v. Bd. of Regents for the State of Ga.*, 468 F.3d 755, 759 (11th Cir. 2006).  Summary judgment is proper if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v.*

14

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden to demonstrate the basis for its motion, and must identify the portions of the record "which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case. *Id.* at 322-23. The burden then shifts to the non-movant to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 324.

## A. Race and Sex Discrimination Claim

The Equal Protection Clause of the Fourteenth Amendment prohibits race and sex discrimination in public employment.[6] *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1268 (11th Cir. 2003). An employee must establish the employer's discriminatory intent through direct or circumstantial evidence. *Jefferson v. Sewon Am. Inc.*, 891 F.3d 911, 921 (11th Cir. 2018). Where, as here, only circumstantial evidence exists of the employer's discriminatory intent, the claim is evaluated under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Under this framework, the

---

[6] Employment discrimination claims against state actors for violation of the Equal Protection Clause are cognizable under § 1983, and are subject to the same standards of proof and use the same analytical framework as discrimination claims brought under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. *Bryant v. Jones*, 575 F.3d 1281, 1296 n.1 & 20 (11th Cir. 2009).

15

plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination.[7] *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528 (11th Cir. 1992).  The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged action.  *Id.*  The plaintiff must then prove, by a preponderance of the evidence, that the legitimate reason proffered was a mere pretext for discrimination.  *Id.*  "[A] reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'"  *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)).  The employee must rebut the reason "head on" and "cannot succeed by simply quarreling with the wisdom of that reason."  *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*); *see also Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) (explaining that, where more than one legitimate reason is given, the plaintiff must rebut each one).  At the summary judgment stage, "[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses,

---

[7] To establish a *prima facie* race discrimination claim, the plaintiff must show that she (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class or was treated less favorably than similarly situated individuals outside the protected class.  *Maynard v. Bd. of Regents of the Div. of Univs. Of the Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). To establish a *prima facie* sex discrimination claim, the plaintiff must show that "she is a female and that the job she occupied was similar to higher paying jobs occupied by males."  *Miranda*, 975 F.2d at 1529.

16

implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (alteration in original) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Ware stated that neither Hornsby-Culpepper's race nor sex played a role in his decision to deny her higher salary request and he provided three non-discriminatory reasons for his decision: (1) her higher salary request was significant and came two months after two employees in her department had been laid off due to a budget-mandated reduction in force; (2) the proposed funding source was to transfer funds from a non-salary "professional services" line item, which the County Board of Commissioners frowned upon; and (3) Hornsby-Culpepper was previously terminated as Clerk in 2011. Hornsby-Culpepper maintains that she rebutted each of those reasons and established that they were pretextual, arguing that (1) there was not a budget issue and there was money left over in the budget at the end of the year, (2) that it was "questionable" whether the Board actually frowned upon the practice of transferring funds from other line items to fund higher salary requests, and (3) that her 2011 termination was without cause. However, her arguments merely dispute the wisdom of Ware's reasoning, which is insufficient to establish pretext. *Chapman*, 229 F.3d at 1030; *see also*

17

*Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("The question to be resolved is not the wisdom or accuracy of [the employer's reasoning] . . . or whether the decision . . . was 'prudent or fair.'  Instead, 'our sole concern is whether unlawful discriminatory animus motivate[d]' the decision." ((internal citations omitted) (quoting *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002))).  Further, "the inquiry into pretext centers on the employer's beliefs, not the employee's beliefs," and "[a] plaintiff is not allowed to [merely] recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer."  *Alvarez*, 610 F.3d at 1265-66. Hornsby-Culpepper failed to point to any evidence in the record to support a finding that the proffered reasons for denying her higher salary request were false and pretextual.

The mere fact that Ware approved higher salary requests for at least three white employees during the same time frame does not establish that Ware's stated non-discriminatory reasons for not approving her request were false.  Further, the circumstances under which those employee's higher salary requests arose were different than Hornsby-Culpepper's and Ware provided legitimate business reasons for approving those requests, but not hers.

Similarly, the fact that three black females in the County Attorney's Office had filed a sexual harassment suit against Ware is irrelevant to Hornsby-Culpepper's case, as she did not allege that she was sexually harassed by Ware and

18

allegations of sexual harassment have no bearing on whether Ware discriminated against Hornsby-Culpepper on the basis of her race or gender.  In short, the sexual harassment suit is not proof that Ware held discriminatory animus toward black women.  Because Hornsby-Culpepper failed to point to any evidence in the record that tended to demonstrate that Ware's stated reasons for denying her higher salary request were false and a pretext for racial or gender discrimination, summary judgment was appropriate.  Fed. R. Civ. P. 56(a).

## B.  Equal Pay Act Claim

Under the Equal Pay Act, employers may not pay their employees at different rates for the same work based on sex.  29 U.S.C. § 206(d)(1).[8]  Hornsby-Culpepper's allegations that she was paid less than Bell even though they occupied the same position and performed the same duties established a *prima facie* case of a violation of the Equal Pay Act.  *Steger*, 318 F.3d at 1077-78.  However, as discussed above Ware proffered reasons for his decision to pay Hornsby-Culpepper less than Bell that were based on factors other than her gender: (1) the higher salary request was significant and came two months after two employees in

_____

[8] An employee demonstrates a *prima facie* case of a violation of the Equal Pay Act "by showing that the employer paid employees of opposite genders different wages for equal work for jobs which require 'equal skill, effort, and responsibility, and which are performed under similar working conditions.'"  *Steger v. General Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003) (quoting *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995)).  An "employer may avoid liability by proving by a preponderance of the evidence that the pay differences are based on '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of productions; or (iv) . . . any other factor other than sex.'"  *Id.* at 1078 (omission in original) (quoting 29 U.S.C. § 206(d)(1)).

19

her department had been laid off due to a budget-mandated reduction in force;

(2) the proposed funding source was to transfer funds from a non-salary

"professional services" line item, which the County Board of Commissioners

frowned upon; and (3) Hornsby-Culpepper was previously terminated as Clerk in

2011. The burden then shifted to Hornsby-Culpepper to rebut Ware's explanation

"by showing with affirmative evidence that it is pretextual or offered as a

post-event justification for a gender-based differential." *Id.* at 1078. As discussed

above, although she quarreled with the wisdom of Ware's reasons, she failed to

point to any affirmative evidence establishing that his proffered reasons were false

or a pretext for unlawful sex discrimination. *Id.* Accordingly, summary judgment

was appropriate.

## C. Retaliation Claims

The anti-retaliation provision of the Equal Pay Act, as incorporated into the

FLSA, makes it unlawful for an employer to discharge or otherwise retaliate

against an employee for filing a complaint or instituting proceedings related to the

FLSA. 29 U.S.C. § 215(a)(3). Once the plaintiff establishes a *prima facie* case of

retaliation,[9] the burden shifts to the employer to proffer a legitimate reason for the

adverse action. *See Wolf*, 200 F.3d at 1342-43 (alteration in original). If the

---

[9] To establish a *prima facie* case of retaliation, a plaintiff may show that "(1) she engaged in activity protected under the act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000) (quotation omitted).

20

employer offers a legitimate reason, the plaintiff must then establish that the proffered reason was pretextual. *Id.* at 1343.

The district court did not err in granting summary judgment on Hornsby-Culpepper's retaliation claims. She failed to show that the selection panel's legitimate reasons for not selecting her[10] for the Associate Judge position were pretext for retaliation. Although she maintains that her non-selection was retaliation because Judge Lovett and Ware were friends, she offered no evidence in support of this speculative assertion. *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create *genuine* issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment." (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995))).

With regard to her termination, Hornsby-Culpepper asserts that a material issue of fact exists as to whether Alli's proffered reasons[11] were pretextual in light of Hornsby-Culpepper's lack of formal disciplinary history and the affidavits of

---

[10] Specifically, the selection panel explained that Turner's interview was "far more superior in comparison to Ms. Hornsby-Culpepper's interview." For instance, Chief Judge Boyd stated that Turner artfully articulated her understanding of the court system and juvenile law, and offered "strong ideas" for advancing the Court's programs and procedures. Conversely, he stated that Hornsby-Culpepper's responses regarding the goals of the Court and areas of improvement were not impressive.

[11] Namely, Alli had explained that (1) there had been many complaints about Hornsby-Culpepper's performance during her two-year second tenure as Clerk; (2) she believed Hornsby-Culpepper failed to redirect or train her staff effectively; and (3) she did not think Hornsby-Culpepper was "a good fit" to implement Canyon Solution's recommended changes for improving the Clerk's Office.

21

fellow County employees who stated that she was an exceptional Clerk. Notwithstanding her lack of formal disciplinary history, Hornsby-Culpepper acknowledged that, during her two-year second tenure as Clerk, there were numerous complaints about the Clerk's Office. In light of the complaints and the recommended changes proposed by Canyon Solutions, Alli—who was Hornsby-Culpepper's direct supervisor—stated that she decided to terminate Hornsby-Culpepper because she was no longer a "good fit" and lacked the leadership skills necessary to implement successfully many of the proposed changes. Hornsby-Culpepper failed to point to any evidence in the record that tended to show that Alli's proffered explanation for her decision to terminate Hornsby-Culpepper was unworthy of credence or that retaliation more likely motivated the termination decision. *Jackson*, 405 F.3d at 1289. Simply because other County employees (who were not responsible for supervising Hornsby-Culpepper) believed that her performance was more than adequate does not establish a genuine issue of fact as to whether Alli's stated reasons for her decision were a pretext for retaliation. *See Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014) (explaining that, summary judgment is appropriate where the non-moving party presents evidence that is "'merely colorable' or 'not significantly probative'"). Accordingly, because Hornsby-Culpepper failed to establish pretext, summary judgment was appropriate. Fed. R. Civ. P. 56(a).

22

## III.    Conclusion

Because there was no genuine dispute as to any material fact in this case, the

district court's grant of summary judgment is **AFFIRMED.**