[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13750

_____

D.C. Docket No. 0:16-cv-62012-CMA

MARY BRATHWAITE,

Plaintiff - Appellant,

versus

SCHOOL BOARD OF BROWARD COUNTY, FLORIDA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 28, 2019)

Before ED CARNES, Chief Judge, ROSENBAUM and DUBINA, Circuit Judges.

PER CURIAM:

Plaintiff/Appellant Mary Brathwaite ("Brathwaite") appeals the district

court's order granting the defendant's motion for summary judgment on

Brathwaite's employment discrimination claims. Brathwaite, an employee of defendant Broward County School Board ("the Board"), is suing her employer for one count of racial harassment/discrimination and one count of retaliation, both under Title VII of the Civil Rights Act of 1964. The claims center around an ongoing dispute Brathwaite had with one of her co-workers, and the Board's alleged failure to properly handle the dispute. We affirm the district court's order finding that her first claim fails as a matter of law. Furthermore, although Brathwaite and the United States Justice Department, filing an *amicus* brief, correctly argue that the district court applied the wrong standard to the retaliation claim, we conclude that even if the correct standard had been applied, Brathwaite's retaliation claim still fails. Thus, we affirm the district court's summary judgment order as to the retaliation claim as well.

## I. BACKGROUND

### A. Factual history

Brathwaite is a black female who has worked for the Broward County School Board since April 2013. In June 2014, the Board hired Evelyn Melendez ("Melendez"), a white female, who worked alongside Brathwaite. Fernando Staple ("Staple"), a black male, jointly supervised them. Brathwaite and Melendez's relationship quickly took a turn for the worse, primarily over Brathwaite's refusal to address Melendez by her preferred nickname, "Gigi." On July 3, 2014, Brathwaite made her first written complaint to Staple

2

regarding an incident of uncontrollable yelling by Melendez. This would be the first of several such written communications regarding the women's strained working relationship, and Staple held a meeting with them on August 21, 2014. The meeting resulted in a verbal reprimand for Brathwaite and a "letter of understanding" for Melendez, both for their unprofessional conduct during the meeting. Both women continued sending letters to Staple complaining about conduct of the other. Additionally, Brathwaite kept a diary of Melendez's alleged bullying that occurred between August 25 and September 2, 2014, and the diary included notations of three occasions when Melendez referred to her as "Black Hate." On September 12, 2014, Staple sent Brathwaite an email directing her to address her co-worker as "Ms. Melendez."

On September 19, the two were involved in a brief physical altercation, during which Melendez called Brathwaite a "black bitch." The police investigated the encounter and found the employees were "mutual combatants."[1] For this encounter, Melendez received a reprimand, while Brathwaite received no discipline, even though the Board's disciplinary committee recommended that she be suspended. Melendez was later re-assigned to a different division. Brathwaite filed an EEOC charge on September 29, and on October 15, 2014,

---

[1] The police reviewed a video of the encounter, found at www.youtube.com/watch?v=wN4CWbjwjdl, with the actual encounter around the 0:45 mark.

3

Staple issued Brathwaite a written reprimand for continuing to refer to Melendez as "Evelyn," in defiance of his previous directive to Brathwaite.

## B. Procedural history

Brathwaite initially filed a charge of racial discrimination and retaliation with the EEOC, which it declined to pursue in May 2016. She subsequently filed a two-count lawsuit against her employer on August 22, 2016, seeking damages, attorney's fees, and a declaration from the court that the Board willfully violated Title VII. She sued for one count of racial harassment/discrimination, and for one count of retaliation by the Board. The Board moved for summary judgment on both counts, which the district court granted. On appeal, the United States Department of Justice filed an *amicus* brief, arguing that the district court failed to apply the Supreme Court's newer and more relaxed legal standard on the retaliation claim. *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405 (2006) (holding that a "materially adverse" action for purposes of a retaliation claim need only dissuade a reasonable worker from making or supporting a charge of discrimination). Although it did not ask this court to reverse the decision outright, it did argue that, if the court reached the question of whether Brathwaite faced an adverse action, that the decision be vacated with instructions to apply the correct legal standard.

4

## II.    ISSUES

1. Did the district court improperly weigh evidence concerning the existence of a racially hostile work environment at the summary judgment stage?

2. Did the district court apply the wrong legal standard in rejecting Brathwaite's retaliation claim?  If so, does the case require remand?

## III.    STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo. Weeks v. Harden Mfg. Corp.,* 291. F.3d 1307, 1311 (11th Cir. 2002).

## IV.    DISCUSSION

### A. Weighing of evidence

Brathwaite argues that the district court made improper findings of fact at the summary judgment stage.  She notes that the district court accepted the police's characterization of the physical altercation as one between two "mutual combatants," rather than accepting Brathwaite's contention that Melendez was the initial aggressor and Brathwaite acted in self-defense. Brathwaite argues that the district court should have accepted her contention for purposes of the summary judgment motion because it would have established a link between Melendez's racial hostility and the physical

5

altercation. Brathwaite also disputes the district court's characterization of the altercation as "minor," when the altercation was sufficient for the Board's disciplinary committee to make a recommendation – albeit a disregarded one – that Brathwaite deserved to be suspended.

The latter grievance is easily dispensable. First, the district court never referred to the altercation as "minor"; rather, the district court's order cites a precedent that references a different "minor" altercation in that case. Second, even if the district court implied such a characterization with its choice of precedent, its decision did not create reversible error. To establish a hostile work environment claim, among other elements, a plaintiff must show that the discrimination was "severe or pervasive." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010). So the issue we must address concerns whether the recorded incident, along with the other evidence of record, rose to the level of "severe or pervasive." The video evidence contradicts Brathwaite's characterization. In particular, the sole physical contact that occurred in the incident consisted of Melendez's swatting Brathwaite's arm away when Brathwaite brought it up toward Melendez. And while we certainly condemn Melendez's reference to Brathwaite as a "black bitch" during the incident, even accounting for that fact, we cannot say that the district court erred in concluding that the alleged incident did not create a "severe or pervasive" atmosphere of discrimination under our precedents.

6

The former grievance, regarding the police's characterization of the women as "mutual combatants," also fails.  Brathwaite's brief completely fails to explain how, even accepting her account as true, the district court committed reversible error. Even if Melendez initiated the physical altercation, her conduct was not so severe or pervasive that it altered the terms and conditions of Brathwaite's employment and created an abusive working environment.  *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  In evaluating the objective severity of the harassment, courts consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."  *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc).  All of those factors weigh against Brathwaite here.

First, and as discussed above, in the four months that Brathwaite and Melendez worked together, there was only one instance of physical harassment and four racially-charged comments.  *See Miller*, 277 F.3d at 1276 (holding that the use of ethnic slurs "three to four times a day" for one month was frequent); *Gupta v. Fla. Bd. Of Regents*, 212 F.3d 571, 585 (11th Cir. 2000) (holding in a sex discrimination case that two occasions of momentary inappropriate touching over the course of six or seven months was infrequent).

7

Second, the physical harassment was not severe.  The video shows that a verbal argument about where to hang flyers got out of hand and a momentary tussle ensued.  The verbal argument lasted for less than one minute, and the physical contact for only three seconds.  No intervention was necessary to put an end to the altercation, and Brathwaite did not sustain any bruising or serious injuries.  Third, the district court concluded that the racially-charged comments "did not amount to more than offensive utterances," a conclusion that Brathwaite does not challenge on appeal.  (DE-39 at 7).  And finally, the district court correctly found that Melendez's treatment of Brathwaite did not objectively interfere unreasonably with Brathwaite's job performance.  *Id.* at 8. That is especially true because neither Brathwaite nor the Board found that her performance had suffered.

Because Brathwaite failed to demonstrate that Melendez's conduct was frequent, severe, humiliating, or that it unreasonably interfered with her job performance, the district court correctly found that she could not pass the objectivity prong as outlined by *Mendoza*, and by extension, that she also failed the fourth prong of *Miller*, requiring the terms and conditions of her employment be altered as a result of the conflict. *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002) (outlining five elements in establishing a hostile work environment: (1) plaintiff is a member of a protected class; (2) plaintiff has been subject to harassment; (3) the harassment

8

was based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for creating the environment). Therefore, we affirm the district court's grant of summary judgment on Brathwaite's first claim.

## B. Retaliation

Brathwaite's claim of retaliation presents a more complex legal question. Brathwaite, supported by the Justice Department's *amicus* brief, argues that the district court wrongly applied an overly demanding legal standard of retaliation, when the Supreme Court has set a lower one. More specifically, the Supreme Court's standard in *Burlington Northern* only requires that a materially adverse action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," rather than requiring actual changes in terms, conditions, or privileges of employment. *Crawford v. Carroll,* 529 F.3d 961, 974 (11th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006)). In other words, the standard for demonstrating a "materially adverse action" is now viewed from the perspective of a reasonable employee, when previously courts looked to concrete changes in the employee's status, such as firings, demotions, or withheld pay raises.

9

Brathwaite and the Justice Department argue that the district court effectively used a bright-line rule that reprimands do not suffice to show the requisite material change in conditions of employment to support a retaliation claim, while the controlling standard under *Burlington* is merely whether the alleged wrongful conduct would have dissuaded the reasonable worker from seeking assistance. According to their assertion, under that standard, a reprimand could be viewed as a dissuasive factor that would have qualified as a materially adverse action, which would make summary judgment for the Board inappropriate.

On the question of the legal standard, Brathwaite is correct. The district court never cited the *Burlington* standard and instead applied the outdated test in *Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1239 (11th Cir. 2001). Indeed, even the Board's brief centers its argument on defeating Brathwaite's claim under the relaxed *Burlington* standard. As the Board notes, however, even the *Burlington* standard does not hold that reprimands are, per se, materially adverse changes for Title VII purposes. Instead, the inquiry remains fact-specific. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. at 69, 126 S. Ct. at 2415. ("We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.")

10

The Eleventh Circuit has not yet held, in a published opinion, whether reprimands alone can or should constitute materially adverse changes under *Burlington.* We will assume, without deciding, for purposes of argument that reprimands alone could constitute a materially adverse action.

The district court found that Brathwaite's retaliation claim failed because she did not demonstrate a causal connection. To prove causation, Brathwaite must establish that "the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." *Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1197 (11th Cir. 1997). In the instant case, Brathwaite arguably engaged in two protected activities: (1) reporting Melendez's discriminatory conduct, and (2) filing her charge with the EEOC.

Although we ultimately reach the same conclusion as the district court, we think that Brathwaite carried her *prima facie* burden by using close temporal proximity between her EEOC charge and her October 15, 2014, reprimand to prove causation. Under Eleventh Circuit precedent, close temporal proximity between the protected conduct and the alleged retaliation can establish causation for purposes of making a *prima facie* case under the burden-shifting framework used in retaliation cases. *Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1363-64 (11th Cir. 2007). The Eleventh Circuit, however, has not established a bright-line rule on what timespans

11

definitively qualify as close temporal proximity for causation purposes. *See id.* at 1364 (holding a three- to four- month disparity insufficient). *But see Jefferson v. Sewon Am., Inc.,* 891 F.3d 911, 925-26 (11th Cir. 2018) (concluding that an employee's termination within a few days, or up to two weeks, of the protected activity can be circumstantial evidence of a causal connection and is a question for the jury). In this case, Brathwaite alleges that her two reprimands fall within a sufficiently close temporal proximity of her prior complaints and her EEOC charge to support an inference of causation.

Brathwaite characterizes the September 30, 2014 memo as a reprimand. But that memo merely documented a verbal reprimand that Staple gave Brathwaite on August 29, 2014, meaning that the actual reprimand occurred a month before Brathwaite filed her EEOC charge on September 29, 2014. The subject line of the memo is "Verbal Reprimand," and the memo states that it is "written to document the results" of the August 29 meeting. In light of that timeline, the memo cannot be viewed as retaliatory action. However, the October 15 reprimand could be viewed as a retaliatory action taken two weeks after Brathwaite's filing of an EEOC charge. Again, we will assume, merely for the sake of argument, that Brathwaite can show causation via close temporal proximity, and that she establishes her *prima facie* case for retaliation.

Even viewed under that light, we conclude that her retaliation claim still

12

fails. After establishing her *prima facie* case, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the employer's action. *Goldsmith v. Bagby Elevator Co., Inc.,* 513 F.3d 1261, 1277 (11th Cir. 2008). In this case, the Board provided abundant reasoning for the reprimand. As the district court correctly noted, Staple issued the written reprimand after Brathwaite continued to flout his earlier directive regarding Melendez's name, and Melendez herself received a reprimand for her role in the ongoing conflict.

Brathwaite, on the other hand, argues that the Board's initial inaction followed by the reprimand suggests pretext.

To show pretext, Brathwaite must "present concrete evidence in the form of specific facts which showed that the defendant's proffered reason was mere pretext. Mere conclusory allegations and assertions would not suffice." *Bryant v. Jones, 515* F.3d 1281, 1308 (11th Cir. 2009) (quoting *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990) (alterations omitted)). To prove pretext, the plaintiff must show that the employer's proffered reason was false, and that retaliation was the real reason. *Hornsby-Culpepper v. Ware,* 906 F.3d 1302, 1312 (11th Cir. 2018).  The plaintiff must rebut the reason "head on," which means something more than merely quarrelling with the wisdom of that decision. *Id.* "At the summary judgment stage, the district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered

13

legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (quotation marks and alterations omitted).

This is a burden that Brathwaite is unable to meet. She only alleges pretext by arguing that "[t]he inaction of the employer followed by its sudden action once a charge was filed suggests that the reasons given by the employer are utter pretext." (Br. for Appellant at 16). As explained above, we disagree with her characterization of the September 30 memo as a retaliatory action, because it merely documented a reprimand she received before she filed her EEOC charge. That leaves us with the question of her October 15 reprimand.

Given that Brathwaite herself admitted to flouting her supervisor's directive to address Melendez by her last name, Brathwaite can hardly argue that it was "weak, implausible, or incoherent" for the Board to reprimand her for insubordination. (DE 35-1: 55). This is especially true since Melendez suffered disciplinary action for her own behavior – including for the physical altercation for which Brathwaite received no discipline. Brathwaite's contention that the reprimand is pretextual because it showed action post-EEOC charge after a lengthy period of inaction is disingenuous. It is undisputed that there had been tensions between the co-workers because Brathwaite refused to call Melendez "Gigi." It is also undisputed that on September 12, 2014, Staple instructed Brathwaite to refer to Melendez by her last name, that Brathwaite consistently and repeatedly ignored her manager's directive, and that a

14

reprimand followed a month later.

In addition, Melendez received a "letter of understanding" regarding her conduct during the joint meeting between her, Staple, and Brathwaite. (DE 27-15). That letter is responsive to Melendez's conduct in the August 21, 2014, meeting, but the letter is dated on October 8 and signed as received by Melendez on October 16, 2014. When viewed in context of the record evidence, then, the reprimand seems even less pretextual than Brathwaite's already-weak contention, and more indicative of the Board's slow handling of disciplinary matters.

Therefore, Brathwaite has failed to rebut "head on" the Board's legitimate, proffered reasons for the reprimands, and she has failed to show a genuine issue of material fact about whether those reasons were a pretext for retaliation. Because of this, we conclude that her retaliation claim also fails, even when properly analyzed under the *Burlington* framework.

## V.    CONCLUSION

Brathwaite's first claim fails as a matter of law. Furthermore, we conclude from the record that her retaliation claim fails, even under the relaxed *Burlington* standard. Thus, we affirm the district court's grant of summary judgment to the Board on both claims.

**AFFIRMED.**

15