[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10761
Non-Argument Calendar
_____

D.C. Docket No. 9:18-cv-80672-DMM

BRIDGETTE BOTT,

Plaintiff-Appellant,

versus

RIC L. BRADSHAW,
in his official capacity as Sheriff of Palm Beach County,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 23, 2019)

Before TJOFLAT, WILLIAM PRYOR and JORDAN, Circuit Judges.

PER CURIAM:

Bridgette Bott, a deputy in the Sheriff's Office of Palm Beach County, appeals the summary judgment against her amended complaint that the Sheriff, Ric L. Bradshaw, disciplined her in retaliation for testifying against fellow officers in violation of the Florida Whistleblower Act, Fla. Stat. § 112.3187(2), and for engaging in speech protected by the First Amendment, 42 U.S.C. § 1983. The district court ruled that Bott's claim of retaliation under the Whistleblower Act failed for want of causation because her disciplinarians were unaware of her statements against other officers. The district court also ruled that Bott's statements that an officer damaged a convict's ankle monitor and other officers assisted in a cover up were made in the ordinary course of her duties and not protected by the First Amendment. We affirm.

## I. BACKGROUND

In our review of the summary judgment against Bott's amended complaint, we must construe the evidence in the light most favorable to her. *See Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018). On July 11, 2012, the Sheriff's Office dispatched Bott to investigate an attempted suicide. Dispatch told Bott that a woman "adv[ised] her boyfriend took a lot of antidepressants last night and is now swinging the swifter at [her] because she wont tell him where his s-o gun is." Bott spoke with the couple briefly and did not inquire about the boyfriend's medication or his mental health. Bott classified the incident as a

2

domestic dispute and drove home to wait for her shift to end at 6:30 a.m. At 6:22 a.m., the woman reported that her boyfriend had shot himself.

Sergeant William Brannin investigated the incident and concluded on October 4, 2012, that Bott had been willfully negligent in her official duties. The sergeant was troubled that Bott was "reticent and unapologetic" during her interview. He reported that Bott said that she spent four minutes with the couple, she considered normal the boyfriend's demands for his gun, she found it unnecessary to conduct a pill count, she thought her actions were "appropriate," and her only regret was failing to file a report. Captain Prieschl immediately concurred in Sergeant Brannin's conclusion that Bott had been willfully negligent. On October 15, 2012, the Sheriff also concurred in that conclusion.

Meanwhile, on October 10, 2012, Bott was working overtime on a security detail at John Goodman's home while he was on bond pending the outcome of his direct appeal of his criminal convictions. Goodman's ankle monitor activated, and the first officer to respond, Bott, observed that the device was "coming apart at the seam where the box was attached at the strap." Other officers arrested Goodman for tampering with his monitor and transported him to jail to await a detention hearing. Bott filed a report and made a statement to Detective Stephen Ultsh about the incident.

3

On October 12, 2012, Bott appeared for Goodman's detention hearing. An assistant state attorney dismissed Bott from the courtroom as an unnecessary witness. Bott quarreled with the state attorney, but Bott eventually left the courthouse without testifying. At the recommendation of Captain Michael Wallace, a sergeant removed Bott from Goodman's security detail.

On November 2, 2012, Captain Prieschl recommended that Bott be disciplined for her "inexcusable" response to the emergency call and her "disturbing and problematic" assessment of her conduct by suspending her for 40 hours without pay. On November 12, 2012, the Sheriff approved the recommendation.

On November 7 and 8, 2012, Goodman's defense attorneys deposed Bott, and on December 18, 2012, she testified at Goodman's bond revocation hearing. The Sheriff's Office compensated Bott for the working hours she spent at the proceedings. During her deposition, Bott stated that it was "pretty common" for her to testify, that she had testified "[a]t least 20 times" about her observations as a deputy sheriff and the reports she prepared, and that providing testimony was an essential job responsibility.

On December 21, 2012, Bott and her counsel attended a pre-disciplinary hearing in which Captain Prieschl sustained the recommendation to suspend her without pay. On January 14, 2013, the Sheriff approved Bott's suspension.

4

On May 17, 2013, Bott's attorney sent the Sheriff a letter to "make [him] aware of the facts . . . obviously not known to [him]" about Bott's involvement in the Goodman case and her removal from his service detail. The attorney described Bott's suspension as "retribution for her truthful testimony." Bott also appealed to the Hearing Review Board, but she withdrew her appeal.

Bott filed a complaint in a Florida court that the Sheriff violated the Florida Whistleblower Act by disciplining her in retaliation for testifying that fellow officers conspired to frame Goodman for tampering with his ankle monitor and for testifying on Goodman's behalf. *See* Fla. Stat. § 112.3187. Bott alleged that she testified that Goodman told her his ankle monitor was making noise while he showered, that she assumed the monitor malfunctioned, that another officer damaged the device and blamed Goodman, and that other officers fabricated evidence and testified against Goodman. For her testimony, Bott alleged, she was disciplined by being removed from the Goodman detail and by being suspended from work without pay for 40 hours.

The Sheriff moved for summary judgment on the ground that Bott's complaint was untimely. The Florida court granted the motion in part and denied it in part. The state court entered summary judgment against Bott's claim of retaliation based on her removal from the Goodman detail because she filed her civil action more than 180 days after the personnel action. *See* Fla. Stat.

5

§ 112.3187(8). The state court denied summary judgment to the Sheriff on Bott's claim of retaliation based on her suspension on the ground that a material factual dispute existed about when the suspension became final.

After Bott filed an amended complaint that included a new claim of retaliation for speech protected by the First Amendment, *see* 42 U.S.C. § 1983, the Sheriff removed Bott's action to the district court, *see* 28 U.S.C. § 1331. On motion of the Sheriff, the district court struck Bott's allegation of retaliation for being removed from the Goodman detail in violation of the Whistleblower Act as untimely. And the district court granted summary judgment in favor of the Sheriff. The district court ruled that Bott "failed to establish the causation element of her *prima facie* case under the [Whistleblower Act]" because no "dispute of fact existed as to whether the decision-makers involved in approving her suspension were aware of [her] protected conduct." The district court also ruled that Bott's claim under the First Amendment failed because her testimony in Goodman's bond revocation proceedings was "an ordinary part of [her] employment" and was given "as a police officer personally involved in a dispute involving a specific instance of supervision."

## II. STANDARD OF REVIEW

We review *de novo* a summary judgment. *Hornsby-Culpepper*, 906 F.3d at 1311. Summary judgment is appropriate when "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(a).

### III. DISCUSSION

Bott makes two arguments for reversal. First, Bott argues that she established a prima facie case of retaliation in violation of the Whistleblower Act. Second, Bott argues that her testimony in favor of Goodman is protected speech.

The district court did not err by entering summary judgment in favor of the Sheriff and against Bott's complaint of retaliation under the Whistleblower Act. Bott failed to establish a prima facie case of retaliation because her testimony in Goodman's bond revocation proceedings was not causally connected to her suspension for negligently investigating a report of attempted suicide. *See Griffin v. Deloach*, 259 So. 3d 929, 931–32 (Fla. Dist. Ct. App. 2018) (listing a causal connection as an element of retaliation under the Act). Undisputed evidence established that neither Captain Prieschl, who recommended suspending Bott for 40 hours, nor the Sheriff, who approved Captain Prieschl's recommendation, knew of Bott's involvement in the Goodman proceedings. Because Bott's disciplinarians were unaware of her testimony, they could not have suspended her to retaliate for that testimony. *See Fla. Dep't of Children & Families v. Shapiro*, 68 So. 3d 298, 306–07 (Fla. Dist. Ct. App. 2011) (concluding the plaintiff's claim of retaliation failed for want of causation when the decisionmaker was unaware of the plaintiff's

protected conduct). It matters not that Bott wrote the Sheriff about the alleged retaliation in May *after* her suspension became final in January because, as Bott's attorney stated, "the purpose of [the] letter [was] to make [the Sheriff] aware of the facts . . . obviously not known to [him]" about Bott's involvement in the Goodman case.

Bott's claim about retaliation based on being removed from the Goodman detail in violation of the Whistleblower Act is not properly before us. The Florida court ruled, and, after removal, the district court agreed, that Bott's claim was untimely because she filed her complaint more than 180 days after a supervisor removed her from the detail. *See* Fla. Stat. § 112.3187(8). Bott makes no argument that her claim was timely.

The district court also did not err by entering summary judgment against Bott's claim of retaliation in violation of the First Amendment. For her speech to be protected, Bott had to prove that she "spoke as a citizen on a matter of public concern." *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). But Bott's speech was made in her role as an employee because it wholly "owes its existence to . . . [her] professional duties." *See Abdur–Rahman v. Walker*, 567 F.3d 1278, 1283 (11th Cir. 2009) (quoting *Garcetti*, 547 U.S. at 421).

Bott's speech was intimately connected to a job to which she had been assigned and to her responsibilities as a deputy sheriff. She testified as an

8

employee of the Sheriff's Office tasked with confining a defendant under house arrest. She testified about an event that occurred while fulfilling her duty to ensure the defendant complied with the conditions of his release, and she reported the event first to her employer. Unlike the employee in *Lane v. Franks* whose "ordinary job responsibilities did not include testifying in court proceedings," 573 U.S. 228, 238 & n.4 (2014), one of Bott's essential job duties entailed providing testimony regarding her investigation of and interaction with criminal defendants. And the Sheriff's Office paid Bott for the time she expended testifying in the defendant's bond revocation proceedings. Because Bott made her "statements pursuant to [her] official duties, [she] [was] not speaking as [a] citizen[] for First Amendment purposes . . . ." *See Garcetti*, 547 U.S. at 421.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of the Sheriff.