[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 24, 2003
THOMAS  K. KAHN
CLERK

No. 02-12203

D.C. Docket No. 00-00875 CV-MHS

RODNEY FITZ,

Plaintiff-Appellant
Cross-Appellee,

versus

PUGMIRE LINCOLN-MERCURY, INC.,
a Georgia Corporation,

Defendant-Appellee
Cross-Appellant,

RICHARD PUGMIRE,

Defendant.

Appeals from the United States District Court
for the Northern District of Georgia

**(October 24, 2003)**

Before TJOFLAT, ANDERSON and CUDAHY[*], Circuit Judges.

TJOFLAT, Circuit Judge:

I.

After resigning from his position as finance and insurance ("F&I") manager

of Pugmire Lincoln-Mercury, Inc. in Atlanta, the plaintiff in this case, Rodney

Fitz, whose race is black, filed suit pursuant to Title VII of the Civil Rights Act,

42 U.S.C. § 2000e, *et seq.*, against his former employer.[1] Fitz alleged that his

---

[*]Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

[1]Fitz also sued the principal owner of his employer, Richard Pugmire. In addition to bringing a Title VII action against his employer and Pugmire, Fitz sought relief against them under 42 U.S.C. § 1981 and various state law theories of liability. Prior to the entry of the summary judgment now before us, the magistrate judge, having obtained the parties' consent, entered an order dismissing all of Fitz's claims except his Title VII claim against the employer and his § 1981 claims against both defendants. This consent order was purportedly entered pursuant to Fed. R. Civ. P. 54(b), but it was inoperative. The parties and the magistrate judge assumed that an order dismissing such claims could be entered by the judge pursuant to 28 U.S.C. § 636(c)(1). It did not operate to dismiss the claims, however, because (1) the order did not recite, in the language of Rule 54(b), that the judge was entering it "upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment," and (2) a Rule 54(b) partial final judgment was never entered. The magistrate judge's dismissal of the claims (referred to in the order) was, as Rule 54(b) states, "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Following its receipt of the magistrate judge's Report and Recommendation (issued with respect to the claims purportedly not disposed of by the consent order), the district court, acting on the defendants' motion for summary judgment, entered a final judgment in favor of the defendants and dismissed Fitz's case. In doing so, the court, albeit tacitly, dismissed with prejudice <u>all</u> of Fitz's claims against the employer and Pugmire. In this appeal, Fitz only challenges the court's summary judgment disposition of his Title VII claim against his employer. Accordingly, in this opinion we only address the merits of that claim and

2

resignation constituted a "constructive discharge" because it was compelled by Pugmire's intolerable, racially discriminatory conduct. In his Report and Recommendation to the district court, the magistrate judge recommended that the district court deny summary judgment in favor of the defendant on the grounds that (a) a material issue of fact remained with regard to Fitz's constructive discharge claim and (b) the lawsuit was timely filed because it was filed within 90 days after Fitz received the EEOC's right-to-sue letter. The district court rejected the second ground and held that the complaint was not timely filed. Accordingly, the court entered summary judgment in favor of the defendant. The district court must have agreed with the magistrate judge's analysis of the constructive discharge claim, however, because the court adopted, without comment, the remainder of the magistrate judge's Report and Recommendation. We hold that the district court's conclusion that a material issue of fact remained with respect to the constructive discharge claim was in error. That is, summary judgment should have been entered in favor of defendant, albeit for a different reason than the one relied upon by the district court. Because our affirmance disposes of the case, we need not address the timeliness of the complaint.

---

the question of whether the district court erred in dismissing it on summary judgment.

II.

Fitz was hired by Pugmire Lincoln-Mercury, Inc. as a salesman in January 1996. Fitz had hoped to be the car dealership's F&I manager, but the position was unavailable. In May 1996, the F&I position became available and was filled by Fitz. Fitz terminated his employment with Pugmire Lincoln-Mercury, Inc. on April 24, 1997. The circumstances leading to his termination are the focus of this litigation, because Fitz cites several pre-resignation facts that, in his view, entitle him to a trial on whether the defendant engaged in racial discrimination in violation of Title VII.

To what facts does Fitz point that might lead a reasonable juror to conclude that a Title VII violation has been committed? It is important to note that Fitz chose a litigation strategy that renders much of his appellate brief irrelevant. For example, Fitz explains that before he was promoted to F&I position, the position became open earlier, during his tenure as a salesman, and was given to an unqualified Caucasian because Pugmire felt uneasy about having an African-American in a managerial role. But, for whatever reason, Fitz did not sue under a failure-to-promote theory. Fitz also claims that he was subjected to a significant salary reduction because of his race. He does not, however, seek damages under a

4

discriminatory paycut theory.[2]  Rather, Fitz cobbles together a host of facts that, in his view, would enable a reasonable jury to conclude that he had been "constructively discharged."

A constructive discharge occurs when a discriminatory employer imposes working conditions that are "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997) (quotation marks and citation omitted).  Could a reasonable juror conclude that the working conditions endured by Fitz were so intolerable as to compel a reasonable person to resign?  Fitz points to five facts that, in his view, force us to answer the question in the affirmative.  We are not persuaded.

First, Fitz asserts that he was reprimanded by Pugmire for not attending a golf outing, even though his direct supervisor gave him permission to miss the outing.  What Fitz ignores is that once the supervisor told Pugmire that a mistake had been made, Pugmire withdrew the reprimand.  As a result, Fitz suffered no injury.  A withdrawn reprimand, which has yielded no adverse consequences, is not a "working condition" *at all*.  We therefore have difficulty understanding how

---

[2]Perhaps Fitz chose not to pursue a paycut claim because several Caucasian employees received equally significant paycuts.

the withdrawn reprimand could amount to an "intolerable" working condition.

Second, Fitz points out that two cartoons, attached to his office computer by unknown persons, contained a character that had been darkened by a pen or pencil – presumably for the purpose of likening the character to Fitz.[3] But there is no evidence that links Pugmire to the cartoons, and Fitz stated in his deposition that he believes that Pugmire did not condone this activity.

Third, Fitz states that after he voiced his allegation of racial discrimination, Pugmire offered Fitz the opportunity (but did not require him) to leave his F&I position and become the dealership's sales manager. We simply cannot understand how an opportunity to transfer to another managerial role could amount to an intolerable working condition.

Fourth, Fitz relies upon the allegedly accurate statements of co-workers that Pugmire planned to fire him at some point in the future due to his race. The idea, we gather, is that Pugmire is responsible for causing Fitz to experience considerable anxiety by leaking knowledge of his sinister plot. Fitz did not, however, confront Pugmire with what his co-workers were saying. Mere

---

[3]The cartoons do not appear to be derogatory. The shaded character in the *Blondie* cartoon, for example, is an eager worker whose boss informs him that he will be an ideal worker because, based upon his previous jobs, he apparently expects "long hours, low pay, and no perks." Many of Fitz's co-workers have taken Fitz's side in his battle with Pugmire, and the cartoons might well have been an expression of their empathy for Fitz's plight.

suspicion of an unsubstantiated plot is not an intolerable employment condition. Even if we assume that the statements of the co-workers were correct, we decline to reach a holding that would encourage speculative litigation[4] and discourage employees and employers from resolving their differences from within the employment relationship. See Bourque v. Powell Elec. Mfg. Co., 617 F.2d 61, 66 (5th Cir. 1980). Moreover, Fitz does not dispute that Pugmire intended that his alleged plot be kept secret. Given this, a jury could hardly infer that Pugmire was engaging in a campaign to force Fitz's resignation by spreading rumors of Fitz's impending doom.

This leaves the fifth and final fact relied upon by Fitz: "unequal pay." We find no evidence in the record that Fitz's pay was unequal.[5] Indeed, the record shows that all other similarly situated Caucasian managers were treated equally. Moreover, unequal pay cannot, standing alone, constitute a constructive discharge. Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1077 (5th Cir. 1981).

---

[4]The employer might never carry out the plan for several reasons. For example, he might undergo a change in his racist worldview or receive advice from his attorney that a racially motivated firing would trigger liability under Title VII.

[5]Fitz's brief certainly points to none. The magistrate judge's Report and Recommendation relies upon evidence of an across-the-board *paycut* for all of Pugmire's managers; it does not suggest that there was an *inequality* in pay.

In sum, Fitz points to the following: a withdrawn reprimand; statements of supervisors that Fitz concedes were not supposed to be revealed to him; cartoons that were admittedly not condoned by Pugmire; a job offer; and a baseless claim of unequal pay. The contrast in facts presented by other constructive discharge cases could not be starker. In Poole, for example, we considered a claim of constructive discharge based upon age discrimination. We held that a genuine issue of material fact existed because the following facts tended to show intolerable working conditions: the defendant refused to process the plaintiff's worker's compensation claim; the defendant told the plaintiff that she was "as old as [his] mother"; the plaintiff was relocated to a new work station without a desk or computer; the defendant instructed other employees not to speak to the plaintiff; and, finally, "her duties and responsibilities [were] reduced to virtually nothing." Poole, 129 F.3d at 551-52. Similarly, we held that a material issue of fact remained in Morgan v. Ford, 6 F.3d 750 (11th Cir. 1993), a constructive discharge case. There, the plaintiff claimed that sexual harassment compelled her to terminate her employment at a prison, and she therefore brought a claim under Title VII. The plaintiff was subjected to a host of vulgar comments by her immediate supervisor.[6]

---

[6]The supervisor told the plaintiff that she "had not had a real man until she had him." Morgan, 6 F.3d at 752. The same supervisor also told the plaintiff that although the superintendent told him that he "could not get his pussy and his paycheck in the same place,"

8

Plaintiff went higher up the ladder and reported the comments to the prison administrators, but no corrective measures were taken. Indeed, the prison administrators looked the other way when the supervisor took retaliatory action by reassigning the plaintiff to "the more distasteful duties around the [prison] compound."[7] Morgan, 6 F.3d at 753.

Viewing the facts in the light most favorable to Fitz, we are unable to conclude that a jury could find that the evidence in this case paints a picture of intolerable working conditions such that a reasonable person would have felt compelled to resign. See Durley v. APAC, Inc., 236 F.3d 651, 658 (11th Cir. 2000) (affirming summary judgment for the defendant on claims of retaliation and constructive discharge where the plaintiff could point only to negative comments regarding medically necessary absences and a smaller raise than that received by other employees).

AFFIRMED.[8]

---

"what [the superintendent] doesn't know won't hurt him." Id.

[7]The plaintiff was assigned "to the guard tower, although she did not have proper weapons certification, to the unit for AIDS patients, and to the housing ward for violent inmates." Morgan, 6 F.3d at 753.

[8]Fitz's brief indicates that the district court awarded Pugmire attorney's fees, and asks that we set aside the award. We find no order in the record awarding such fees. Accordingly, we do not address Fitz's request.