[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 30, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-10171
Non-Argument Calendar

_____

D. C. Docket No. 02-02712-CV-C-S

FRED E. RILEY, JR.,

Plaintiff-Appellant,

versus

BIRMINGHAM BOARD OF EDUCATION,
a Municipal entity,
EVELYN BAUGH,
an individual,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 30, 2005)

Before BLACK, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Fred Riley appeals the district court's grant of summary judgment to defendants Birmingham Board of Education and Evelyn Baugh on his complaint alleging employment discrimination in violation of 42 U.S.C. § 1983 and Title VII, 42 U.S.C. § 2000e et seq.

## I.

Riley, a white male, worked for the Board as a head football coach and physical education teacher at Ensley High School during the 2000–2001 school year. In April 2001 Baugh, a black female and Ensley's principal, made an advisory recommendation that the Board not renew Riley's coaching contract. The Board conducted its own evaluation and decided not to renew Riley's contract. Later, the Board approved Riley's transfer to the position of assistant football coach and physical education teacher at Huffman High School.

Disappointed with what he regarded as a demotion, Riley applied for the position of head football coach at Carver High School, also within the Board's school district. He did not get it. Instead, the Board selected Carver's interim head coach, a black male, for the job. Shortly after, Riley resigned from his position at Huffman.

## II.

Riley filed this lawsuit, asserting that the Board discriminated against him

on the basis of his race when it chose not to renew him as Ensley's head football coach, appointed him as Huffman's assistant football coach, and chose not to hire him as Carver's head football coach. Specifically, Riley asserted that the Board's employment decisions violated § 1983 and Title VII. Riley further contended that Baugh was subject to individual liability under § 1983 for Riley's non-renewal at Ensley. Riley argued that Baugh was a final decisionmaker for the Board and was not entitled to qualified immunity.

With regard to Riley's § 1983 and Title VII claims against the Board, the district court concluded that Riley had not established that there was a genuine issue of material fact that the Board's articulated reasons for not renewing his Ensley coaching contract and not hiring him for the Carver coaching position were either a pretext for racial discrimination or were otherwise unworthy of credence. The district court further determined that Riley had not shown there was a genuine issue of material fact that his transfer to Huffman constituted constructive discharge from his employment with the Board. Thus, the district court granted summary judgment to the Board.

As for Riley's § 1983 claims against Baugh, the district court found there was no genuine issue of material fact indicating that Baugh was a decisionmaker for the Board with respect to the non-renewal of Riley's coaching position at

3

Ensley. Accordingly, the district court granted summary judgment to Baugh.

**III.**

We review de novo a district court's decision to grant summary judgment. Maynard v. Bd. of Regents, 342 F.3d 1281, 1288 (11th Cir. 2003). "A party seeking summary judgment must demonstrate that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 840 (11th Cir. 2000) (citation omitted). In determining whether a genuine issue of material fact exists, we resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. Id. We may not weigh evidence to resolve a factual dispute. Holifield v. Reno, 115 F.3d 1555, 1561 (11th Cir. 1997). If a genuine issue of material fact exists, summary judgment must be denied.

**IV.**

We consider first Riley's non-renewal as Ensley's head coach. Riley argues there is direct evidence that the Board did not renew his coaching contract because of his race. Specifically, Riley points to Baugh's comment during a football team meeting that "we have to take care of our own because it is a hard world out there, and no matter what, people are going to look at us by our skin color."

Direct evidence is "evidence which, if believed, would prove the existence

4

of a fact [in issue] without inference or presumption." Bass v. Bd. of County Com'rs, 256 F.3d 1095, 1105 (11th Cir. 2001) (citation and internal marks omitted). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race] . . . constitute direct evidence of discrimination." Id. (citation and internal marks omitted). "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." Id. (citation and internal marks omitted).

Baugh's statement about "taking care of our own" is not direct evidence of discrimination. The comment was made during a football team meeting, not during the decisionmaking process. An inferential step would have to be made before concluding the statement was race-based. As a result, Riley has not shown any direct evidence of race discrimination in the Board's decision not to renew his coaching contract.

Alternatively, Riley argues there is circumstantial evidence that the Board did not renew his coaching contract on the basis of his race. We use the familiar McDonnell Douglas burden-shifting framework to determine whether there is circumstantial evidence that would allow the factfinder to infer discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973); Bass, 256 F.3d at 1103. Riley must first establish a prima facie case of

5

discrimination.  See McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824; see also Holifield v. Reno, 115 F.3d 1555, 1561–62 (11th Cir. 1997).  If he does so, the burden shifts to the defendants to offer a legitimate, nondiscriminatory reason for Riley's non-renewal.  See McDonnell Douglas, 411 U.S. at 802, S. Ct. at 1824.  Riley must then show that the proffered reason is merely a pretext for racial discrimination.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255, 101 S. Ct. 1089, 1094 (1981).  He must show that the employer is more likely motivated by a discriminatory reason or that the employer's proffered explanation is unworthy of credence.  See Jackson v. Ala. State Tenure Comm., 405 F.3d 1276, 1289–90 (11th Cir. 2005) (citation and internal marks omitted).

We need not decide whether Riley has established a prima facie case because we conclude that he has failed to show there is a genuine issue of material fact that each of the Board's articulated reasons for Riley's non-renewal was a pretext or was unworthy of credence.  One of the Board's proffered reasons was that Baugh sincerely believed Riley had made derogatory remarks to students.[1]  Although Riley offers evidence that he made no such statements, this is not

_____

[1] We assume for present purposes only that Riley has created a genuine issue of material fact as to causation.  Although Baugh may not have had actual authority to not renew Riley's contract, she arguably could have injected bias into the decisionmaking process because her advisory recommendation could have started the process of Riley's non-renewal as Ensley's head coach.  See Jones v. Gerwens, 874 F.2d 1534, 1541, n.13 (11th Cir. 1989).

6

dispositive. The question is whether Baugh sincerely believed that Riley made the remarks. See Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763 (11th Cir. 2005); Sears, Roebuck & Co. v. Elrod, 939 F.2d 1466 (11th Cir. 1991); Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1256 (5th Cir. 1977) ("Even if [the employer] wrongly believed that [the Title VII claimant] violated this policy, if [the employer] acted on this belief it was not guilty of racial discrimination."). Riley fails to offer any evidence that calls into question the sincerity of Baugh's belief. He therefore has failed to create a genuine issue of material fact as to one of the Board's articulated reasons, and we do not need to consider any of the Board's other reasons for the non-renewal.

Riley next alleges that the Board violated Title VII by not hiring him as the Carver head coach. Riley asserts that the Board's many articulated reasons for not selecting him for the position were either a pretext for racial discrimination or were unworthy of credence.

Again, we need not decide whether Riley has established a prima facie case because we conclude that he has failed to establish that there is a genuine issue of material fact that each of the Board's asserted reasons for Riley's non-hiring was a pretext or was unworthy of credence. One of the Board's proffered reasons was that Riley's interview went poorly. Riley has not created a genuine issue of

7

material fact about how the interview went. We have previously concluded that an employer's view that an interview went poorly was a legitimate reason for not hiring an individual. See Chapman v. AI Transport, 229 F.3d 1012, 1033 (11th Cir. 2000) (en banc). Id. Summary judgment was properly entered against Riley in his non-hiring claim against the Board.

Riley next asserts that he was constructively discharged in violation of Title VII because he received a demeaning demotion by being moved from head coach at Ensley to assistant coach at Huffman. To prove constructive discharge, Riley must show that the Board imposed working conditions that were "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003) (citation and internal marks omitted). We have stated that employees may be constructively discharged by a demeaning demotion or transfer. Stamey v. S. Bell Tel. & Tel. Co., 859 F.2d 855, 860 n.11 (11th Cir. 1988).

Riley has not shown that his working conditions were "intolerable." Riley assured the Board that he was willing to work as an assistant coach at Huffman. In these circumstances, a reasonable factfinder could not find that the position of assistant coach at Huffman was demeaning. It follows that Riley has not established a genuine issue of material fact on his constructive discharge claim.

8

Finally, Riley asserts a § 1983 claim against the Board and a § 1983 claim against Baugh. Riley contends the Board is liable under § 1983 because Baugh was a final policymaker and her discretion became the official policy of the Board. Riley also contends that Baugh is liable under § 1983 because she was a final decisionmaker and is not entitled to qualified immunity.

We have observed that when § 1983 is used as "a parallel remedy" to Title VII, the elements of the two causes of action are the same. See Snider v. Jefferson State Cmty. Coll., 344 F.3d 1325, 1328 n.4 (11th Cir. 2003) (emphasis omitted). As we have previously explained, the district court properly granted summary judgment against Riley on his Title VII claim. Thus, even assuming that Baugh is a policymaker under § 1983, the Board is not liable under § 1983. See id. For the same reasons, even assuming that Baugh is a decisionmaker under § 1983 and not entitled to qualified immunity, she is not liable under § 1983. See id.

## V.

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the Board and Baugh.

AFFIRMED.