[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14136
Non-Argument Calendar
_____

D.C. Docket No. 7:18-cv-00446-LSC


REGINALD ERIC SPROWL,

                                                          Plaintiff-Appellant,

versus

MERCEDES-BENZ U.S. INTERNATIONAL, INC.,

                                                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 7, 2020)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and BRANCH, Circuit Judges.

PER CURIAM:

Reginald "Eric" Sprowl appeals from the district court's grant of summary judgment in favor of his former employer, Mercedes-Benz U.S. International, Inc. (hereinafter "Mercedes-Benz"), in his case alleging race-based discrimination, retaliation, and constructive discharge in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Sprowl argues that the district court erred in granting Mercedes-Benz's motion for summary judgment because (1) Mercedes-Benz's proffered legitimate, nondiscriminatory reasons for not promoting him were pretext for discrimination, (2) he established a *prima facie* case of retaliation and that Mercedes-Benz's proffered reasons were pretext, and (3) he presented sufficient evidence of discriminatory harassment to submit the constructive discharge claim to a jury. After review, we affirm.

## I.    Background

In March 2017, Sprowl, a black male, resigned from his position as a maintenance technician at Mercedes-Benz, which he had held since September 2012. Approximately a year later, on March 22, 2018, Sprowl filed a complaint against Mercedes-Benz, alleging violations of Title VII and 42 U.S.C. § 1981. Specifically, Sprowl's amended complaint alleged that Mercedes-Benz denied him promotion to team leader because of his race, retaliated against him for filing a racial discrimination complaint, and constructively discharged him. After discovery, Mercedes-Benz moved for summary judgment. Along with its motion,

Mercedes-Benz filed a series of exhibits which demonstrated the following undisputed facts.

In September 2012, Sprowl began working at Mercedes-Benz as a maintenance technician team member in "Zone 2." Each six-person maintenance team included a "team leader." A "team leader" is one rank above a "team member," and, as the title suggests, directs the team. A "group leader," in turn, supervises the team leaders. The group leader also conducts the team members' performance evaluations.[1] Above the group leader is the maintenance manager. Scotty Morris was Sprowl's group leader and Scott McCall was the maintenance manager.

In 2015, the acting team leader of Sprowl's team, Ken Gamble, called a group of black employees "wild animals swinging in trees." Sprowl complained about this comment to Morris, and the HR department investigated the complaint. Gamble was discharged shortly after.

Sprowl claimed his relationship with Morris soured after this incident because Morris rated him as "Needs Development" in the potential appraisal

---

[1] The performance evaluations consist of two parts. First, the employer reviews the employee's performance in their current job. A score of 3.00 or higher shows that the employee "Meets Expectations." Second and separately, the employer rates the employee's potential for advancement to other positions. This potential appraisal results in either "Ready" or "Needs Development" labels.

category on every performance review.[2]  Sprowl also came to believe that Morris had turned Sprowl's colleagues against him after he complained about Gamble; he noticed that, after they spoke with Morris, colleagues who had once greeted him and talked with him no longer did so.  However, Sprowl did not hear Morris telling anyone not to associate with or not to be friendly towards him.[3]  Further, none of the team members said anything to Morris about Gamble's termination, and Morris himself was unaware of any campaign to bring Gamble back to work.  Morris knew that Gamble's termination stemmed from Sprowl's complaints, but none of the team members had personally expressed any resentment about this fact to him.

In January 2016, Mercedes-Benz posted an opening for a team leader position (the "2016 team leader promotion") and Sprowl signed up for consideration.  The promotional process at Mercedes-Benz consisted of the

---

[2] Sprowl had received two performance reviews from Morris prior to his complaint about Gamble and application for the promotion.  In 2013, Sprowl received a performance review from Morris who gave him a performance evaluation score of 3.00 and a "Needs Development" potential appraisal rating.  With regard to the potential appraisal rating, Morris stated that Sprowl was progressing well but needed to continue to develop his technical skills, take a leadership role on a project or assignment, and cross-train in other areas of the shop, which he could do by volunteering to work during his off week.  Morris also suggested specific courses Sprowl could take to improve his leadership qualities.  In his 2014 performance review, Morris again gave him a performance evaluation score of 3.00 and a "Needs Development" potential appraisal rating along with similar suggestions for improvement.  Sprowl did not receive a performance review in 2015.

[3] Sprowl felt particularly uncomfortable around one coworker, Sprayberry, who tried to help Gamble get his job back and told others at the plant that Gamble was not a racist.  But after Sprowl reported this behavior to the HR department and also to one of the managers, he stopped hearing as much about Sprayberry's behavior.

4

following steps: (1) signing up for the promotion on the self-nomination form; (2) attending the team leader academy; and (3) receiving a peer review and performance evaluation.  In addition, to be considered, the employee needed to complete the "Team Leader Assessment," and have a current performance review on file.  The performance review itself was a two-part process consisting of an evaluation of (1) the employee's skill level (the "performance evaluation") and (2) the employee's ability and readiness to develop to the next level (the "potential appraisal").[4]  The selection decision was made jointly between Morris, the group leader, and McCall, the maintenance manager.

Pursuant to this process, Mercedes-Benz circulated a peer input form, which allowed a promotional candidate's coworkers to comment about whether they thought the candidate would be a good team leader.  Sprowl noticed that his name was not listed on the peer input forms and sent Morris an email requesting an

---

[4] A member of the Mercedes-Benz HR department further explained Mercedes-Benz's team leader promotional process as follows.  Team members who signed up to be considered for a promotion to team leader and who met certain basic requirements were evaluated and given either 1 or 2 points for each of 3 separate criteria: (1) the team member assessment (scores of 29 and above resulted in 2 points, while scores less than 29 resulted in 1 point); (2) the potential appraisal rating (a rating of "Ready" resulted in 2 points, while a rating of "Needs Development" resulted in 1 point); and (3) the peer input ratings (scores of 3.5 and above resulted in 2 points, while scores less than 3.5 resulted in 1 point).  Members who received 2 points for each category were designated as "Ready 1," those who received 2 points for 2 out of the 3 categories were designated as "Ready 2," and those who received 1 point in 2 or more categories were designated as "Needs Development."  Mercedes-Benz management then filled the team leader position from the candidates who were designated "Ready 1" or "Ready 2," while those designated "Needs Development" overall were ineligible for promotion.  Morris never saw any part of the peer review process except for the ultimate score from the HR department.

5

explanation for the omission.  Morris responded that there had been a mistake as a result of a mix-up between Sprowl's first name, "Reginald," and the name he went by, "Eric."[5]  Mercedes-Benz then amended the peer input sheet and handed out the new sheets to the employees.

Because Sprowl did not have a current performance review, Morris conducted a review in February 2016.  Morris gave Sprowl a performance evaluation score of 3.04, which was 0.04 higher than his last evaluation.  Morris gave him a "Needs Development" potential appraisal rating, explaining that he was not ready for promotion at that time because he needed more exposure to a particular area of the maintenance crew, "East End of Zone 1," and to cross-train in other areas of the shop.  Morris also recommended that Sprowl demonstrate his leadership skills by filling in for the team leader when he was absent, filling out the Daily Turnover Report, and leading a project in a neighboring area of the facility.[6]  In the employee comment section of the review, Sprowl took umbrage with these recommendations.  He claimed that he had worked on both ends of Zone 1,

---

[5] The HR employee who made this mistake was did not know Sprowl and was unaware of Sprowl's race.

[6] These comments differ from his comments for "Needs Development" on the past two evaluations in 2013 and 2014.  For example, in 2013 and 2014, Morris noted that Sprowl generally needed to "continue to develop his technical skills" and "[t]ake a leadership role on a project or assignment.  In 2016, Morris gave more specific and focused steps, such as "needs more exposure to the East End of Zone 1" and "could show his leadership skills by filling in for his [Team Leader] when he is off shift."

including the east end for about a year.  He further stated that he believed his "Needs Development" potential appraisal rating was an unfair assessment intended to keep him from obtaining the team leader position.[7]

Ten Mercedes-Benz employees applied for the 2016 team leader promotion and three were selected.  Sprowl—the only candidate who was not white—was not one of those three.  The three candidates selected had been received either a "Ready 1" or "Ready 2" promotion rating, as opposed to Sprowl's "Needs Development" promotion rating, which disqualified him.[8]  Besides Sprowl, one other candidate received a "Needs Development," promotion rating and was therefore also not eligible for consideration.  Morris and McCall believed the selected candidates were the best qualified for the position because they exhibited superior leadership skills, regularly filled in as team leader, had significant experience filling out shift turnover reports, had high technical skills, adeptly solved problems, and had experience throughout the entire shop.  After not receiving the promotion, Sprowl filed a charge with the EEOC ("2016 EEOC

---

[7] During his deposition after filing his lawsuit, Sprowl disputed additional recommendations in the performance evaluation.  He argued that he had occasionally filled in as the team leader—at least prior to his complaint and the deterioration of his relationship with Morris—and had developed his technical and leadership skills through courses and special trainings.  Moreover, he asserted that he had volunteered to work during his weeks off.

[8] Confusingly, Mercedes-Benz uses the term "Needs Development" for both the potential assessment conducted by the team leader and the overall assessment, which accounted for the potential assessment, peer input, and performance evaluation, conducted by HR.  Here, we mean the "Needs Development" label produced by the HR department which, unlike the "Needs Development" on the potential assessment, disqualified Sprowl for promotion.

charge"). He claimed that in not promoting him, Mercedes-Benz discriminated against him because of his race and retaliated against him for complaining about Gamble. Neither Morris nor McCall was aware that Sprowl filed the 2016 EEOC charge.

In March 2017, Mercedes-Benz posted another opening for a team leader position (the "2017 team leader promotion."), for which Sprowl again signed up. Sprowl once again received an updated performance review from Morris, in which he received a performance evaluation score of 3.08 and another "Needs Development" potential appraisal rating. This evaluation listed essentially the same overall performance comments and skills that Sprowl needed to enhance as in Sprowl's previous evaluations. But in the potential appraisal section, Morris noted that Sprowl could obtain "Ready" status by volunteering to act as a team leader, attending leadership workshops offered at Mercedes-Benz's training center, and taking the lead on a project in his work area.[9]

Seven candidates applied for the 2017 team leader promotion and one was selected. Again, Sprowl was the only candidate who was not white. And again, he was not selected. The selected candidate was rated "Ready 1" in his promotion

---

[9] Sprowl, in the section for employee comments on his evaluation, wrote that it was a "travesty" that a ten-year U.S. Navy veteran was being told that he was not ready for a promotion to team leader when younger, white males with no experience as leaders, less seniority, and less education were being rated "Ready." He further stated that the evaluation was "the continuation of a discriminatory Group Leader that [was] retaliating against [him] for reporting a violation of [his] civil rights."

8

rating. Morris and McCall believed that the selected candidate was the most qualified for the position based on the same considerations they relied on in selecting the candidates for the 2016 team leader promotion. And Sprowl was again not eligible for the position because of his "Needs Development" promotion rating. The two other candidates who also received a "Needs Development" promotion rating were also not selected.

After not receiving the March 2017 promotion at Mercedes-Benz, Sprowl decided to look for a new job and join his family in South Carolina. Sprowl claimed he left Mercedes-Benz because management and his co-workers continued to harass him and he did not believe he would ever be promoted. No one at Mercedes-Benz told him to resign, but he felt he needed to for the sake of his mental and physical well-being. At his new job in South Carolina, Sprowl worked as a multi-craft maintenance technician, just as he did at Mercedes-Benz, and earned $29.75 per hour—slightly less than his approximately $32 per hour wage at Mercedes-Benz—in addition to overtime pay and a full benefits package. In April 2017, Sprowl filed an EEOC charge ("2017 EEOC charge) complaining that his former employer, Mercedes-Benz, retaliated against him for filing the 2016 EEOC charge by denying him promotion. The EEOC provided Sprowl a notice of right to sue in February 2018, along with an investigator's report into the matter, and

9

Sprowl filed his complaint in the United States District Court for the Northern

District of Alabama shortly thereafter.

The district court granted Mercedes-Benz's motion for summary judgment.

With regard to his discrimination claim, the district court found that Sprowl had

shown that he was qualified for the promotions and thus established a *prima facie*

case of discrimination on the basis of race, but that he had not produced sufficient

evidence to disprove the legitimate reasons presented by Mercedes-Benz for not

promoting him.  As to Sprowl's retaliation claim, the court found that he failed to

present a *prima facie* case of retaliation because he did not establish a causal link

between the failure to promote and the protected activity, and had also failed to

establish pretext.  Finally, regarding Sprowl's constructive discharge claim, the

district court found that, even construing the facts in the light most favorable to

Sprowl, no reasonable person in his position would find his working conditions so

intolerable that they felt compelled to resign.  Accordingly, the district court

granted Mercedes-Benz's motion and dismissed Sprowl's complaint with

prejudice.  Sprowl timely filed a notice of appeal.

## II.    Standard of Review

We review a district court's order granting summary judgment *de novo*,

"viewing all the evidence, and drawing all reasonable inferences, in favor of the

non-moving party." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005).

## III.    Discussion

Sprowl argues that the evidence he presented was sufficient to defeat summary judgment for his discrimination, retaliation, and constructive discharge claims related to his employer's failure to promote.[10]  As explained further below, we conclude that Sprowl has not shown that his employer's articulated and legitimate reasons for promoting other candidates were pretextual, thus making summary judgment appropriate for both his retaliation and discrimination claims.[11] We also hold that summary judgement was appropriate for the constructive discharge claim because, even construing the evidence in the light most favorable to Sprowl, no reasonable jury could find that his working conditions had become so unbearable that a reasonable person in his position would be compelled to

---

[10] Although these claims were brought under both Title VII and 42 U.S.C. § 1981, the claims have the same burden and are both subject to the same *McDonnell Douglas* framework. *See Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1217 (11th Cir. 2019).

[11] In his reply brief, Sprowl appears to argue that the discrimination happened before the failure to promote, not during the promotion process.  Because such an argument would concede that no discrimination affected the adverse employment action, *i.e.,* the failure to promote, and because an adverse employment action is central to the claims Sprowl advances, we decline to consider this argument.  In any case, this argument was waived by not raising it at the district court level or even in the opening brief.  *See Finnegan v. Comm'r of Internal Revenue*, 926 F.3d 1261, 1271 (11th Cir. 2019) ("The general rule is that we will not consider an issue raised for the first time on appeal."); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012) (collecting binding cases which hold arguments not raised in the opening brief are waived).

11

resign.  As we proceed through the analysis, we are guided by the principle that "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment."  *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987).  Likewise, inferences predicated on speculation, or a mere scintilla of evidence in support of the nonmoving party, will not suffice to overcome a motion for summary judgment.  *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016).[12]

A. Failure to Promote: Race Discrimination and Retaliation Charges

Title VII makes it an unlawful employment practice for an employer to take adverse employment actions against an employee "because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  Further, under Title VII, an employer may not retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  *Id*. § 2000e-3(a).  In the absence of direct evidence of discrimination, a plaintiff can prove a discrimination claim or a retaliation claim under Title VII through

---

[12] On account of these evidentiary principles, we decline to address Sprowl's claim that the district court was incorrect to exclude the EEOC investigator's report from evidence.  For the purposes of this appeal, we presume the evidence was admissible.  However, the statements contained within the report are "inferences predicated on speculation" from employees with no personal knowledge of the hiring process, and therefore do not advance Sprowl's case.  *Melton*, 841 F.3d at 1219.  Similarly, we decline to address Sprowl's contentions that his supervisor turned his coworkers against him because he offers no evidence to support this belief.

circumstantial evidence, which we analyze using the three-step, burden-shifting

framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See*

*Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010); *E.E.O.C. v.*

*Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002). To succeed under

this framework, a plaintiff must first present enough evidence to establish a *prima*

*facie* case of discrimination; the employer then has the burden of production to

articulate legitimate, nondiscriminatory reasons for the adverse employment

action; and then the plaintiff must prove that those reasons were pretext. *Joe's*

*Stone Crabs*, 296 F.3d at 1272. Here, we may proceed directly to the pretext step

(or "third step") of the analysis for both the retaliation and racial discrimination

claims and presume, as the district court did, that Sprowl established a *prima facie*

case for each.[13] *See Ctr. v. Sec'y, Dep't of Homeland Sec., Customs & Border*

*Prot. Agency*, 895 F.3d 1295, 1303 (11th Cir. 2018). Because both claims fail at

the same step of the *McDonnell-Douglas* test, and because the facts underlying

each claim are the same, we analyze them together.

Under the third step of the *McDonnell-Douglas* framework, the court must

consider all the evidence to determine if a reasonable factfinder could conclude

---

[13] The district court found that Sprowl did not meet a *prima facie* case for retaliation because he could not establish a causal connection between his 2015 internal complaint about Gamble or his 2016 EEOC charge and Mercedes Benz's decision not to promote him in 2016 or 2017. Because, for the purpose of our analysis, we assume that Sprowl could establish a *prima facie* case, we do not address whether his retaliation claim stems from his internal complaint or his 2016 EEOC charge.

that the employer's legitimate reasons for the adverse conduct were pretext for discrimination. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). The burden to prove pretext is on the plaintiff. *See Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018). An employer's proffered reason for the adverse action is not pretext for discrimination unless the plaintiff can show "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original). A plaintiff may establish pretext by showing that "the legitimate nondiscriminatory reasons should not be believed" or that "discriminatory reasons more likely motivated the decision than the proffered reasons." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332 (11th Cir. 1998).

Mercedes-Benz proffered two reasons for its 2016 and 2017 team leader promotion decisions: first, that Sprowl did not demonstrate the leadership qualities necessary for the promotion, and second, that the candidates chosen were the most qualified. Sprowl advances the following arguments to show that these were pretext for discrimination or retaliation: (1) Sprowl's "Needs Development" ratings in his performance reviews were inconsistent with his actual experience and demonstrated potential; (2) two fellow employees thought Sprowl was qualified for the promotion and was passed over due to the Gamble incident; (3) Sprowl's name was initially not on the list to be considered for the 2016 team leader promotion,

14

even though he had applied for it; (4) all the candidates chosen were white; and (5) all the candidates chosen had similar performance reviews to Sprowl's.

These arguments are clearly insufficient to show pretext. First, Sprowl's disagreement with his "potential appraisal" rating in his performance reviews does not render Mercedes-Benz's explanation of its promotion decisions pretextual. For starters, when weighing whether an employee actually needed development, our caselaw makes clear that only the employer's legitimate belief matters. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005); *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1206 (11th Cir. 2013). But even if we were to consider Sprowl's disagreement, Mercedes-Benz presented unrefuted evidence that the potential appraisal rating in his performance review was only one of several factors considered in the promotion decision. Further, Morris gave numerous reasons for Sprowl's "Needs Development" potential appraisal ratings, most of which Sprowl does not contest. For example, Sprowl does not dispute that he had not taken certain leadership courses, led projects in his area, completed administerial tasks behooving of a team leader such as filling out shift turnover reports, or obtained cross-training in all aspects of his maintenance team. Sprowl "can not [sic] establish pretext merely by disagreeing with the evaluations." *Standard*, 161 F.3d at 1333.

15

Sprowl's contention that the initial exclusion of his name from the peer input sheet shows pretext is also not persuasive. The record shows that this oversight was an administrative mistake and corrected immediately. *See Ctr. v. Sec'y, Dep't of Homeland Sec., Customs & Border Prot. Agency*, 895 F.3d 1295, 1303–04 (11th Cir. 2018) (finding that an agency error which was quickly corrected did not establish pretext because there was "no evidence to establish that this temporary error was anything but a genuine oversight."). Moreover, the employee who made the mistake did not know Sprowl or that he was black.

Sprowl's argument that he was comparably qualified to the selected candidates is likewise unpersuasive. It is not enough for Sprowl to "simply argu[e] or even [] show[] that he was better qualified than the person who received the position he coveted." *Springer v. Convergys Customer Mgmt. Grp.*, 509 F.3d 1344, 1349 (11th Cir.2007) (per curiam) (quoting *Brooks v. County Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)). Rather, he "must show that the disparities between the successful applicant's and [his] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Id.* (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004)). Sprowl has not even attempted to make that showing. Nor could he. The candidates selected were rated more highly in their performance reviews and peer evaluations,

16

which resulted in them receiving "Ready 1" or "Ready 2" promotion ratings.  By comparison, Sprowl's lower ratings in his performance review and peer evaluation resulted in a "Needs Development" promotion rating.  This rating disqualified him from consideration.  True, these are subjective criteria for promotion, but "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII or other federal employment discrimination statutes."  *Id*. at 1185.  The fact that these candidates were white while Sprowl was black does not refute the legitimate differences the employer perceived between the candidates, especially because other white candidates who had similar reviews to Sprowl were also rejected.

At base, Sprowl disagrees with his employer's choices.  But arguments that "merely dispute the wisdom" of an employer's choices are "insufficient to establish pretext."  *Hornsby-Culpepper*, 906 F.3d at 1313.  Thus, both Sprowl's retaliation claim and racial discrimination claim fail.

B.  Constructive Discharge Claim

To establish a valid constructive discharge claim, a plaintiff must show that his "working conditions were 'so intolerable that a reasonable person in [his] position would have been compelled to resign.'"  *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997) (quoting *Thomas v. Dillard*

17

*Dep't Stores, Inc.*, 116 F.3d 1432, 1433–34 (11th Cir. 1997)).  This showing has "two basic elements":  (1) that the plaintiff "was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign," and (2) "that he actually resigned."  *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016).

Sprowl argues that his working conditions were intolerable because (1) he was blamed for Gamble's termination such that his coworkers no longer associated with him and (2) Mercedes-Benz declined to promote him on two occasions.  Even assuming that "placing blame" on an employee is an intolerable working condition, Sprowl has not set forth any objective evidence establishing that anyone blamed him for Gamble's termination or that one of his superiors at Mercedes-Benz instructed his coworkers to be unfriendly towards him.  *See Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977–78 (11th Cir. 2003) ("Mere suspicion of an unsubstantiated plot is not an intolerable employment condition.").  And absent a showing of additional, difficult working conditions, failure to promote does not give rise to an intolerable working condition.  *See Wardwell v. Sch. Bd. of Palm Beach Cty., Fla*., 786 F.2d 1554, 1558 (11th Cir. 1986) (holding that a plaintiff "who may have been frustrated" by her failure to be promoted, combined with added workload and "embarrassment" at work, "simply d[id] not rise to the intolerable level at which a reasonable person would feel compelled to resign.").

18

Thus, the district court did not err in granting Mercedes-Benz's motion for summary judgment as to Sprowl's constructive discharge claim.

**AFFIRMED.**