[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-10008

_____

OXFORD HOUSE, INC.,
a Delaware not for profit corporation 1010
Wayne Avenue Silver Spring, Maryland 20910,
OXFORD HOUSE-DOTHAN,
OXFORD HOUSE-COOP,
OXFORD HOUSE-DODGE,

                                        Plaintiffs-Appellants,

*versus*

CITY OF DOTHAN, ALABAMA,
an Alabama municipal corporation,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 1:21-cv-00655-RAH-KFP

_____

Before WILSON, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Oxford House, Inc. (OHI) is a nonprofit umbrella organization which has chartered over 3,000 group homes in the United States, including three homes in Dothan, Alabama: Oxford House-Coop, Oxford House-Dodge, and Oxford House-Dothan (collectively, Oxford Houses). Plaintiffs-Appellants OHI and Oxford Houses[1] appeal the district court's decision in favor of the City of Dothan, Alabama (the City) on Oxford House's failure-to-accommodate claim under the Fair Housing Act (FHA). After careful review and with the benefit of oral argument, we affirm.

**I**

OHI is a 501(c)(3) corporation that developed a sober communal-living concept where residents who are recovering from

---

[1] When referring only to the nonprofit organization, this opinion will use "OHI." When referring only to the three group homes, this opinion will use "Oxford Houses." When referring to *both* OHI and Oxford Houses—who together brought this case and appeal—this opinion will use "Plaintiffs-Appellants." A central issue in this case is whether the Oxford Houses should be considered businesses, and because it is not disputed that OHI is a business, this delineation between entities is critical.

alcoholism or drug addiction live together. Typically, between six and fifteen unrelated residents live in these group homes. OHI provides charters to the individual houses as long as certain requirements are met: (1) the house must be democratically self-run; (2) the house must be financially self-supporting; and (3) the residents must immediately expel any resident who returns to drugs or alcohol.

In 2018, Alabama contracted with OHI to open group homes throughout the state, which included the three Oxford Houses in Dothan. OHI sought to set up utility services at each property in the name of each house. The City's policy requires that if a utility account is to be opened in a business's name, then that business must obtain a business license. Dothan municipal code broadly defines "business" to include "any commercial or industrial enterprise, trade, profession, occupation, calling, or livelihood, including the lease or rental of residential or nonresidential real estate, and every other kind of activity whether or not carried on for gain or profit." Dothan City Code § 18-2. The municipal code also provides that business licenses are free to nonprofit organizations like OHI and its chartered houses. Therefore, if the three Oxford Houses are determined to be "businesses" under the municipal code, they must obtain a free business license in order to open a utility account, or they must qualify for a reasonable accommodation.

OHI requested an accommodation for each house, but the City denied the requests, insisting that all utility accounts opened

in associational names (including organizations with similar pur-poses as OHI) require a business license. Ultimately, OHI employ-ees had the landlords of the homes, who are not residents, open accounts for each house.

Plaintiffs-Appellants sued the City for violating the FHA by requiring the Oxford Houses to obtain business licenses in order to receive utility service. Plaintiffs-Appellants asserted two claims: in-tentional discrimination and failure-to-accommodate. Plaintiffs-Appellants moved for partial summary judgment on their failure-to-accommodate claim while the City moved for summary judg-ment on all claims. The district court denied Plaintiffs-Appellants' partial motion for summary judgment and granted the City's mo-tion for summary judgment on all the claims. Plaintiffs-Appellants timely appealed the denial of the failure-to-accommodate claim.[2]

## II

"We review the entry of summary judgment *de novo*, exam-ining the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party." *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*, 46 F.4th 1268, 1274 (11th Cir. 2022). We will affirm if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[2] Plaintiffs-Appellants do not appeal the district court's grant of summary judg-ment in the City's favor on the intentional discrimination claim.

### III

Plaintiffs-Appellants appeal the district court's grant of summary judgment in the City's favor on their failure-to-accommodate claim. As a preliminary matter, we must decide whether the Oxford Houses are businesses under Dothan City Code. If the Oxford Houses are businesses and require a business license, we will then consider their request for an accommodation and failure-to-accommodate claim.

*A*

Plaintiffs-Appellants argue that the Oxford Houses are not businesses but instead operate as families, and that this familial dynamic is critical to resident recovery. However, the City's definition of "business" is broad, covering "every other kind of activity whether or not carried on for gain or profit." Dothan City Code § 18-2. We do not deny the familial nature of the Oxford Houses, but however familial they are, they still meet the City's definition of a "business." The Oxford Houses engage in not-for-profit *activity*: providing support and community to recovering addicts. Each house elects its own officers and leases property in the house name rather than the name of a resident, and the residents must abide by OHI charter requirements, or the house will lose its designation and affiliation with the institution. As Plaintiffs-Appellants acknowledge, this is enough to give rise to a business classification under Dothan's definition of that term. Therefore, for the purposes of this appeal, the Oxford Houses were properly categorized as "businesses" by the district court, and we proceed now to Plaintiffs-Appellants' accommodation argument.

*B*

The FHA prohibits discrimination in housing and housing related matters. 42 U.S.C. § 3601 *et seq.* Specifically, "the FHA proscribes a defendant's 'refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.'" *Sailboat Bend*, 46 F.4th at 1280 (quoting 42 U.S.C. § 3604(f)(3)(B)) (alteration adopted).

To prevail on a failure-to-accommodate claim, the plaintiff must prove "(1) that he is disabled, (2) that he requested a reasonable accommodation, (3) that the requested accommodation was necessary to afford him an equal opportunity to use and enjoy a dwelling, and (4) that the defendant refused to make the requested accommodation." *Schaw v. Habitat for Human. of Citrus Cnty., Inc.*, 938 F.3d 1259, 1264 (11th Cir. 2019) (alterations adopted and internal quotation marks omitted).

Both the City and Plaintiffs-Appellants moved for summary judgment on this claim, focusing their arguments on the reasonableness and necessity prongs. The district court did not address the reasonableness prong.[3] But the district court found that Plaintiffs-

---

[3] The City argues that even if we find that the district court erred on the necessity prong, we can still affirm on the reasonableness prong. *See Gundy v. City of Jacksonville*, 50 F.4th 60, 70 (11th Cir. 2022) (We "may affirm the judgment of the district court on any ground supported by the record, regard-less of whether that ground was relied upon or even considered by the district court." (quoting *Kernel Recs. Oy v. Mosely*, 694 F.3d 1294, 1309 (11th Cir. 2012)). Although the City is correct, we decline to affirm on this alternate reason

Appellants' accommodation—waiver of the business license requirement to set up a utilities account—was unnecessary.

"The necessity element focuses on the relationship between the requested accommodation and the plaintiff's disability." *Sailboat Bend*, 46 F.4th at 1280. "The accommodation must (1) actually alleviate the effects of the plaintiff's disability and (2) address the needs created by the plaintiff's disability." *Id.*

Before we turn to Plaintiffs-Appellants' reasons for why an accommodation is necessary, we must first address their argument that the district court improperly applied the summary judgment standard. Plaintiffs-Appellants spill considerable ink, but their argument lacks merit.

"The party seeking summary judgment bears the initial burden to demonstrate the basis for its motion, and must identify the portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The movant may meet this burden by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.*

---

because, as discussed, we find the district court correctly found Plaintiffs-Appellants' accommodation was not necessary. On the other hand, Plaintiffs-Appellants argue that the district court erred in failing to consider the reasonableness of the accommodation. But our case law does not require that the district court address the reasonableness prong if the plaintiff cannot meet the necessity prong. *See Sailboat Bend*, 46 F.4th at 1281.

"The burden then shifts to the non-movant to establish, by going beyond the pleadings, that a genuine issue of material fact exists." *Id.* at 1311–12.

The City showed that Plaintiffs-Appellants failed to establish necessity, which is what the City needed to show to defeat Plaintiffs-Appellants' summary judgment motion. At that point, Plaintiffs-Appellants needed to produce evidence of necessity, both for their own motion and to oppose the City's motion. As described below, Plaintiffs-Appellants failed to do so. Thus, the district court properly assessed the motions for summary judgment.

Turning to the merits, Plaintiffs-Appellants argue that the City should have waived the business license requirement, contending that the accommodation is necessary because of therapeutic and financial reasons. The district court disagreed and so do we.

First, Plaintiffs-Appellants argue that an accommodation is necessary for therapeutic reasons. They identify two therapeutic necessities: the residents' need for truth, and the residents' need for the Oxford House model. Their truth argument goes like this: "[t]he therapeutic need . . . is that 'recovery under the Oxford House model promotes accountability and truth,' a business license incorrectly classifies the residents as a business, and 'having the residents certify or register themselves as a business when they are not a business is dishonest and detrimental to their recovery and the model.'" *Oxford House, Inc. v. City of Dothan*, No. 1:21-cv-655-RAH, 2022 WL 17475763, at *8 (M.D. Ala. Dec. 6, 2022) (alteration adopted). But the record does not establish that the residents

will be the ones filling out business licenses for these homes. So far, OHI employees, not residents, have been the ones attempting to open utilities accounts. There is no evidence to suggest that the residents' therapeutic needs would be harmed by—or, indeed, that they would ever even learn of—OHI employees' representations to the City that Oxford Houses are businesses.

Plaintiffs-Appellants also argue that the business license requirement undermines three therapeutic aspects of the Oxford House model. One such aspect is an Oxford House's familial environment. Plaintiffs-Appellants' expert testified (1) that an Oxford House's familial environment promotes residents' recoveries and (2) that being "in actuality" a business would damage that environment by "negat[ing] the specific activity of developing family bonds among residents." But there is no evidence to support what the expert meant by "be[ing], in actuality, a business," and Plaintiffs-Appellants offer no explanation for why filing a business license would discourage the forming of any familial bonds. Thus, there is no evidence that an accommodation is necessary to preserve the therapeutic aspect of the Oxford House model.

Another named benefit of the Oxford House model is that, by requiring utilities be put in the house name, an Oxford House prevents any one resident from gaining control over others and making him or herself invulnerable to expulsion. But again, there is no evidence that the business license would result in the kind of unilateral control that the Oxford House model seeks to avoid— especially if an OHI employee or the individual House's landlord

applies for the license. In fact, registering as a business would avoid that problem because there would be no danger that the utilities would be in the name of a resident.

Finally, Plaintiffs-Appellants argue that the business license requirement undermines the Oxford House model by preventing the residents from being directly liable to the utility company. One of Plaintiffs-Appellants' experts explained that having the utilities in the name of the house promotes responsibility among those who live there. Like the district court, we find that this expert evidence does not show how filing a business license would eliminate this responsibility and thus how opening a utility account without a business license "actually alleviate[s] the effects of" or "address[es] the needs created by" the residents' disability—i.e., their addiction. *Sailboat Bend*, 46 F.4th at 1280. The district court properly found that there was no therapeutic need to exempt the Oxford Houses from obtaining a business license for utilities.

In addition to therapeutic reasons, Plaintiffs-Appellants also argue that an accommodation is necessary for financial reasons. They maintain that an increase in insurance premiums for the landlords will be passed onto the residents through increased rental rates. Even assuming that the increase in insurance premiums presented in the district court would be passed onto the residents, Plaintiffs-Appellants have "adduced no concrete evidence that [Oxford House] residents' addiction has some causal tie to their inability to afford a rent increase." *Sailboat Bend*, 46 F.4th at 1280. Plaintiffs-Appellants point to one affidavit where, Lori Hortzclaw, a

former Oxford House resident and current Regional Manager of OHI, explains that increasing the insurance premium will result in a 12% increase in rent, making housing costlier and financially out of reach for many potential Oxford House residents.

However, this is even less evidence than what we found inadequate in *Sailboat Bend*. Again, assuming that increased costs would be transferred to the residents, Plaintiffs-Appellants have provided no evidence about its current residents' income and their ability (or inability) to afford rent increases. *See id.* at 1281. Holtzclaw's generalized statements about the risk that residents will be unable to afford rent increases are insufficient. *See id.* The district court properly found that there was no financial need to exempt the Oxford Houses from obtaining a business license for its utilities.

## IV

Thus, the district court did not err in denying Plaintiffs-Appellants' motion for partial summary judgment, nor in granting the City's motion for summary judgment on Plaintiffs-Appellants' failure-to-accommodate claim. We affirm the district court's judgment.

**AFFIRMED.**